IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFF BRUNECZ and JULIE ANN CHAPMAN, individually and on behalf of all others similarly situated, | ) | |
| Plaintiff | ) | Docket No. 1:24-cv-00203-SPB |
| v. | ) | |
| WARREN GENERAL HOSPITAL, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Defendant Warren General Hospital ("Defendant") purposefully installed third-party trackers on its website. When patients like Jeff Brunecz and Julie Ann Chapman ("Plaintiffs") visited the website, including authenticated portions like the patient portal and appointment scheduler, the trackers recorded patients' confidential health communications with Defendant. The trackers then disclosed those communications to third parties, like Facebook and Google, without patient consent or knowledge. Contrary to Defendant's assertion, these allegations go far beyond what Defendant describes as "conclusory" allegations of "mere[] . . . website usage data." The allegations do not rely on Defendant's present installation of trackers. And they do not rely on regulations that have been overturned.

"Patients have a constitutionally protected privacy interest in their medical information." *Behar v. Pennsylvania Dep't of Transp.*, 791 F. Supp. 2d 383, 397, 410 (M.D. Pa. 2011). "The Third Circuit recognizes a privacy right in medical records and medical information . . . [this right of privacy] is not limited to medical records." *Paul P. v. Verniero*, 170 F.3d 396, 401, 402 (3d Cir.

1999). "[T]he revelation of this information 'will work a clearly defined and significant injury' to Plaintiff and his family members." *Salcedo v. Milton S. Hershey Med. Ctr.*, 2024 WL 476888, at *3 (M.D. Pa. Feb. 7, 2024). Defendant completely disregarded its patients' rights and expectations of privacy, and its own promises of privacy, and instead used trackers to record and send a wealth of Plaintiffs' personal, private, confidential health information to third parties.

Defendant does not deny that it purposely installed multiple third-party trackers on its website in order to spy on its patients. Nor does it deny that it surreptitiously intercepted and disclosed its communications with patients made via the website to unauthorized third parties. And yet, incredibly, Defendant paints itself as a hapless victim, caught up in "one of dozens of copycat lawsuits filed around the country." Defendant is not a hapless victim, but a trusted health care provider that knowingly utilized third-party tracking technologies to gather patients' private information, for the purpose of bolstering its marketing efforts and increasing profits. As Defendant indicates, it is, unfortunately, not alone in its misbehavior. Health providers across the country have been caught serving their patients' private information to third parties like Facebook and Google, secretly and in violation of their legal duties.

Courts in Pennsylvania, the Third Circuit, and across the country uphold claims like Plaintiff's. *See, e.g., Murphy, et al., v. Thomas Jefferson University Hospitals*, No. CV 22-4674, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) ("*Thomas Jefferson*") (denying motion to dismiss in entirety in identical online tracking case); *Oliver v. Noom, Inc.*, 2023 WL 8600576, (W.D. Pa. Aug. 22, 2023) ("*Noom*"); *Frederick v. St. Clair Health Corp.*, 2024 WL 3375090 (Pa.Com.Pl. July 02, 2024) ("*St. Clair*"); *Doe v. Main Line Fertility, Ltd.*, 2024 WL 1829564 (Pa.Com.Pl. Jan. 17, 2024) ("*Main Line*"); *Doe v. Reproductive Medical Associates of Philadelphia, P.C.*, 2024 WL 1829565 ("*RMA*") (Pa.Com.Pl. Feb. 09, 2024) (same) (motion for interlocutory appeal denied); *Doe v.*

*Clearbrook, Inc.*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127 (Pa. Ct. Common Pleas. Feb. 15, 2024) ("*Clearbrook*") (same); *Doe v. OSS Orthopaedic Hosp., LLC*, 2024 WL 2026976 (Pa.Com.Pl. Apr. 26, 2024) ("*OSS*") (same); *Doe v. Mount Nittany Health System*, 2024 WL 2093148 (Pa.Com.Pl. Mar. 21, 2024) ("*Nittany*") (allowing near all claims); *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654 (E.D. Pa. 2015), *aff'd sub nom.*, 739 F. App'x 91 (3d Cir. 2018) (allowing similar claims in similar data breach case); *In re Wawa, Inc. Data Sec. Litig.*, 2021 WL 1818494 (E.D. Pa. May 6, 2021) ("*Wawa*") (same); *Opris v. Sincera Reprod. Med.*, 2022 WL 1639417 (E.D. Pa. May 24, 2022) (same); *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514 (M.D. Pa. 2021) ("*Rutter's*") (same); *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018) (same); *Henck v. Squirrel Hill Health Center*, 2022 WL 22702619 (Pa.Com.Pl. Nov. 18, 2022) (same); *Pohlhaus v. Trivalley Primary Care, P.C.*, 2022 WL 22702620 (Pa.Com.Pl.Civil Div. Sep. 09, 2022) (same); *Black v. Smith Transport, Inc.*, 2023 WL 11282161 (Pa.Com.Pl. Mar. 17, 2023) (same); *Reese v. Teen Challenge Training Center, Inc.*, 2021 WL 12258536 (Pa.Com.Pl. July 15, 2021) (same); *see also* Exhibit A-1 (listing **over eighty** orders denying motions to dismiss in cases with allegations practically identical to those here).[1]

Defendant argued no valid legal reason why Plaintiffs' claims should be dismissed. Plaintiffs sufficiently stated their claims. Defendant failed to meet its burden, and Plaintiffs thus ask that this Court deny Defendant's motion to dismiss in its entirety.

## STATEMENT OF FACTS

The core factual allegations involved here boil down to Defendant, Plaintiffs' healthcare provider, misusing their private, protected, confidential, health information, by disclosing it to

[1] Defendant asks the Court to take judicial notice of other lawsuits that have been filed. In the same vein, Plaintiff asks the Court to take judicial notice of these cases—online tracking technology cases involving healthcare provider defendants—and their ultimate conclusion allowing claims to proceed. *See* F.R.E. 201(b).

unauthorized third parties, who in turn misused their information by further disclosing it to fourth parties.

Defendant is a trusted Pennsylvania healthcare provider. Plaintiffs' First Amended Class Action Complaint ("Compl.") ¶¶ 31, 35-40. Plaintiffs are Defendant's patients and have received healthcare services from Defendant, including for medical conditions including hernia treatment, a colon procedure, primary care, and maternity care. *Id.* ¶¶ 114-34. As part of their medical care and at Defendant's direction and encouragement, Plaintiffs relied on Defendant's website to communicate confidential patient information, including searching for treatments and medical information related to their medical conditions and treatments, topics related to finding a doctor for their medical conditions and treatments, scheduling appointments for medical care, paying for treatment related to their medical treatment and care, and accessing Defendant's patient portal and the information therein. *Id.* ¶¶ 115, 125. Contrary to Defendant's assertion, this disclosed information *is* protected patient information. It goes far beyond mere website browsing data.

Plaintiffs reasonably expected that their communications with Defendant were confidential and would not be transmitted to or intercepted by a third party—in essence, that the information would be safeguarded according to Defendant's Privacy Policies and the law. *Id.* ¶¶ 114-34. Indeed, Defendant promises patients in its own Privacy Policies that "we will require your signed authorization before disclosing your medical information outside the hospital." *Id.* ¶¶ 74.

Unfortunately, Defendant does share protected health information without written authorization. *Id.* ¶¶ 1, 24, 27. Defendant does so via "trackers" or "tracking technologies," that it knowingly configured and implemented into its Website. *Id.* ¶ 1, 10. These trackers collected and transmitted patients' Personally Identifying Information ("PII") and/or Protected Health Information ("PHI") (collectively, "Private Information") to Facebook, Google, Microsoft,

DoubleClick, StackAdapt, Hotjar, Salesforce, CrazyEgg, and potentially others (the "Third Parties"), without patients' knowledge or authorization ("the Disclosure"). *Id.* Plaintiffs did not consent to Defendant's Disclosure of their Private Information to third parties. *Id.* ¶¶ 8, 15, 20, 27. The Private Information Defendant Disclosed included the pages and content they viewed; their seeking of medical treatment; their statuses as patients; information regarding their patient portal activity; the specialties of the medical providers they searched for and viewed; the names of the medical providers they searched for and viewed; the search results that Plaintiffs clicked on; the medical services they viewed; and their identities. *Id.* ¶¶ 120, 130.

Defendant's Disclosure was for the purpose of marketing its services, enhancing its marketing efforts, and bolstering its profits. *Id.* ¶¶ 1, 16, 40, 48, 66, 78, 108, 173. The Third Parties, in turn, sold Plaintiff's Private Information to fourth-parties. *Id.* As a direct result of Defendant's and the Third Parties' sale of their Private Information, Plaintiffs receive targeted advertisements directly related to the treatment they sought from, and Private Information they shared with, Defendant. *Id.* ¶¶ 122, 132. Because of Defendant's actions, Plaintiffs suffered injuries, including monetary damages, loss of privacy, statutory damages, unauthorized disclosure of and access to their Private Information to third parties and fourth parties, use of their Private Information for advertising purposes, embarrassment, humiliation, frustration, and emotional distress, diminution of the value of their Private Information, lost benefit of their bargain, and increased risk of future harm from further unauthorized use and disclosure of their information. *Id.*

## **STANDARD**

Rule 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, giving "the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion "does not require

'detailed factual allegations'"; it merely needs "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Federal notice and pleading rules require the complaint to provide the defendant fair notice of what the...claim is and the grounds upon which it rests." *Smith v. Keppley*, 2024 WL 2214679, at *2 (M.D. Pa. May 15, 2024) (quotation omitted).

When ruling on a 12(b)(6) motion to dismiss, "the court must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Id.* at *2. "[D]efendant bears the burden of showing no claim has been stated." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

## ARGUMENT

### I. DEFENDANT DISCLOSED ITS PATIENTS' PRIVATE INFORMATION—NO LEGAL DEVELOPMENTS CHANGE THAT

As an initial matter, Defendant's statement that Plaintiffs' claims are based on its "mere website usage data on unauthenticated webpages" grossly misstates the allegations in Plaintiffs' Amended Complaint. In fact, Plaintiffs pleaded that Defendant, their trusted healthcare provider, secretly collected their healthcare data to sell to third-party brokers, who in turn sold their data to fourth-party brokers. Compl. ¶¶ 1, 16. They alleged that Defendant disclosed this valuable and sensitive private health information to Facebook (and other enormous companies, including Google, Microsoft, StackAdapt, Hotjar, Salesforce, and CrazyEgg (*id.* ¶ 1)), without their knowledge or authorization, including:

- Plaintiffs' identities;
- Plaintiffs' patient portal activity;
- the pages and content Plaintiffs viewed;
- Plaintiffs' seeking of medical treatment;
- Plaintiffs' statuses as patients;
- the specialties of the medical providers Plaintiffs searched for and viewed;

- the names of the medical providers Plaintiffs searched for and viewed;
- the search results that Plaintiffs clicked on; and
- the medical services Plaintiffs viewed.

*See* id. ¶¶ 7, 120, 130. The above clearly constitutes Personally Identifying Information ("PII") as defined by the Federal Trade Commission and Protected Health Information ("PHI") as defined by HIPPA and Defendant cannot argue in good faith that it is not. *Id.* ¶¶ 1-2.

Defendant's reliance on *Am. Hosp. Ass'n v. Becerra*, 2024 WL 3075865 (N.D. Tex. June 20, 2024), to suggest otherwise is misplaced. That highly political summary judgment opinion, concerning a hospital association lawsuit against the Secretary of Health and Human Services ("HHS") cannot support Defendant's argument here. *Becerra* presented a very limited question on summary judgment – whether HHS exceeded its rule making authority. The answer to that limited question does not affect whether a contract was breached under Pennsylvania law, whether a tort was committed under Pennsylvania law, or whether any Pennsylvania statutes were violated.

Further, *Becerra* in fact reaffirmed the HHS guidance in large part, vacating only one discrete piece of it. *Id.* at *4 n. 3, *17 n. 8 (stating that the order "is not intended to, and should not be construed as, limiting the legal operability of other guidance in the germane HHS document" and noting that the HHS guidance "contains an array of guidance for covered entities, much of which is both legally and pragmatically sound"). That piece vacated by *Becerra* is very narrow and does not encompass the breadth of the factual allegations here. The court in *Becerra* was focused on "unauthenticated public webpages" or "websites that don't require login credentials or user verification." *Id.* at *2. The court then found that "a user's intent in visiting a[n unauthenticated public webpage] is unknowable." *Id.* at *7.

Plaintiffs' allegations are the very ones the court in *Becerra* reaffirmed. Plaintiffs alleged, for example, that they are Defendant's patients and that they "relied on [Defendant's] Website and

Online Platforms to communicate confidential Private Information to Defendant." Compl. ¶¶ 115, 125. Thus Plaintiffs' intent *is* knowable—they specifically alleged it. In further stark contrast to the facts the court in *Becerra* relied on, Plaintiffs allege they used Defendant's website, including to find medical services, search locations, schedule appointments, and to access a patient portal. *Id.* ¶¶ 120, 130. These are the very situations the *Becerra* court explicitly did not consider as exceeding HHS's rule making authority. Furthermore, these allegations are directly contrary to Defendant's assertion that its trackers "operate on the unauthenticated parts of the Website." MTD p. 12. Plaintiffs clearly allege that the trackers operated to disclose their "**patient portal activity**." Compl. ¶¶ 120, 130. Defendant's argument inappropriately quarrels with this allegation. Plaintiffs' allegations—that Defendant Disclosed their Private Information *including on authenticated portions of the website like the patient portal and appointment scheduler*—must be accepted at this stage.

To be clear, Plaintiffs are not suing Defendant for violating the HHS Guidance. Not one of Plaintiffs' claims in this litigation turns on the interpretation of the HHS Guidance. Since *Becerra*, other courts faced with similar litigation agree that *Becerra* does not inform whether a motion to dismiss should be granted—including at least one Pennsylvania federal court and one Pennsylvania state court.[2] *See Thomas Jefferson*, 2024 WL 4350328, at *4 (finding identical

[2] *See, e.g.*, *In re The Christ Hosp. Pixel Litigation*, 2024 WL 4476613 (Ohio Com.Pl. Oct. 08, 2024); *Lamarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107 (Ind. Super Ct., Elkhart Co. Super. Ct. Oct. 3, 2024); *Adrienne St. Aubin v. Carbon Health Technologies*, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024); *Howard, et al., v. Laboratory Corp. of Am., et al.*, 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024); *Arroyo v. Seattle Reproductive Medicine*, 2024 WL 4288083 (Wash.Super. Sep. 23, 2024); *M.G. v. TherapyMatch, Inc.*, 2024 WL 4219992 (N.D. Cal. Sept. 16, 2024); *A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D.Ill. Sept. 9, 2024); *Doe v. Coffee Reg'l Med. Ctr., Inc.*, 2024 Ga. Super. LEXIS 602 (Ga. Super. Ct. Sept. 6, 2024); *M.R. v. Salem Health Hospitals and Clinic*, 2024 WL 3970796 (D. Or. Aug. 28, 2024); *Doe v. Univ. Health Sys., Inc.*, 2024 Tenn. Ch. LEXIS 2 (Tenn. Ch. Aug. 9, 2024) (explicitly considering *Becerra*); *Doe v. Mountain States Health Alliance*, 2024 Tenn. Ch. LEXIS 1 (Tenn. Ch. July 30,

allegations sufficient to allege defendant's disclosure of plaintiffs' information violated HIPAA); *St. Clair*, 2024 WL 3375090. Those holdings harmonize with those of the many courts across the country—including the courts of this state—that have denied motions just like that filed by Defendant here. *See OSS*, 2024 WL 2026976; *Nittany*, 2024 WL 2093148; *Main Line*, 2024 WL 1829564; *RMA*, 2024 WL 1829565; *Clearbrook*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127; *see also* Exhibit A. Accordingly, Plaintiffs sufficiently alleged disclosure of their Private Information and Defendant's argument otherwise should be rejected.

## II. Plaintiffs Sufficiently Alleged Standing

Article III standing requires a plaintiff to demonstrate: "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A*, 590 U.S. 538, 540 (2020). Each of these requirements are easily satisfied under a straightforward application of *Clemens v. ExecuPharm, Inc.*, 48 F.4th 146 (3d Cir. 2022). "In the context of a motion to dismiss, we have held that the [i]njury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege[ ] some specific, identifiable trifle of injury." *Blunt*

2024); *Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357 (S.D.N.Y. July 30, 2024); *Kurowski v. Rush Sys. for Health*, 2024 WL 3455020, at *6 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") ("the Court expressly declined to defer to this bulletin in deciding whether [plaintiff] had stated a claim . . . it has always been true that regulated entities may not impermissibly disclose personal health information to tracking technology vendors."); *Smith, et al. v. Loyola University Medical Center,* No. 23 CV 15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024); *Doe v. County of Santa Clara*, 2024 WL 3346257, *6 n.4 (N.D. Cal. July 8, 2024) ("The ongoing challenges to the HHS rules are irrelevant to whether plaintiff has stated her claims in this case; the HHS rules are currently in effect and are only one group of facts that support the plausibility to plaintiff's statutory and common law claims."); *Gibson v. Planned Parenthood Federation of America, Inc.*, 2024 WL 4251892 (N.D. Cal. July 2, 2024); *Cole v. Quest Diagnostics, Inc.*, 2024 WL 3272789 (D.N.J. July 2, 2024); *Brahm v. Hospital Sisters Health System, et al.*, 2024 WL 3226135 (W.D. Wis. June 28, 2024).

*v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (emphasis omitted) (citation and internal quotation marks omitted) (second alteration in original); and *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633-34 (3d Cir. 2017) (same). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation and internal quotation marks omitted) (alteration in original); and *Horizon*, 846 F.3d at 633–34.

**A. Plaintiffs Alleged Concrete Injury Sufficient to Confer Standing**

Defendant asserts that Plaintiffs' allegations must "closely mirror[ ] an injury that American courts have traditionally recognized as a basis for a lawsuit[,]" (MTD p. 13 (citing *Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 229 (M.D. Pa. 2023)), and that Defendant's "mere use of the Meta Pixel or Google Analytics on its Website," without more," is "insufficient to establish a concrete harm." MTD p. 13.

The injuries Plaintiffs allege are exactly the type of injury American courts have traditionally recognized as a basis for a lawsuit. Indeed, what is a more fundamentally American value than the right to privacy of one's healthcare information? As such, numerous courts in both Pennsylvania and across the country have concluded plaintiffs have demonstrated injury where they allege their personal information has been disclosed without authorization and that they have been harmed as a result of the disclosure. *See, e.g., Thomas Jefferson*, 2024 WL 4350328; *Main Line*, 2024 WL 1829564; *RMA*, 2024 WL 1829565; *Clearbrook*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127; *OSS*, 2024 WL 2026976; *Nittany*, 2024 WL 2093148; *see also* Exhibit A-2 (collecting factually identical cases finding standing/injury).

While Defendant attempts to liken this highly sensitive information to "button clicks, webpage scrolling, search terms, and the like," (MTD p. 12), given Plaintiffs' status as patients

seeking medical care from their healthcare provider, this type of information is more akin to the "highly sensitive personal information such as medical diagnoses information" that the court in *In re BPS Direct* recognized. 705 F. Supp. 3d 333, 340 (E.D. Pa. 2023). In an era when healthcare providers encourage their patients to schedule and search for providers online using their website, Defendant's attempt to differentiate the private medical treatment those patients seek online from "private medical records, medication records, payment records, and other actual documents" (MTD p. 12), is a distinction without a difference. A reasonable person expects that a sensitive medical condition for which he or she seeks treatment is subject to the same right to privacy as a doctor's note. *See e.g., Thomas Jefferson*, 2024 WL 4350328, at *6 ("Plaintiffs have plausibly alleged that Defendant's status as a healthcare provider, coupled with the Privacy Policies, created an expectation of privacy that would be 'highly offensive' to breach.").

Here—despite Defendant's assertion to the contrary—Plaintiffs have alleged very specific allegations of the types of highly sensitive information that Defendant disclosed without authorization. For example, Plaintiff Brunecz alleges that he has been a patient of Defendant since 2012 and has been treated for a hernia, a colon procedure, and primary care. Compl. ¶ 114. Plaintiff Brunecz further alleges he used Defendant's website and the patient portal to search for a doctor for a colonoscopy, and thereafter, his Facebook was immediately bombarded with advertisements for "Cologuard." *Id.* ¶ 114. Plaintiff Chapman, who has been a patient of Defendant since 2021, has received maternity care at Defendant, and alleges she has received advertisements for weight loss products on her Facebook fees. *Id.* ¶¶ 124, 126. Plaintiffs' allegations of injury from this violation of their privacy are therefore sufficient to confer standing. *See, e.g., Thomas Jefferson*, 2024 WL 4350328, at *6 (allowing similar claims to proceed against a hospital based on allegations that a hospital disclosed PHI to Meta, Meta in turn tailored

advertisements to plaintiffs, and plaintiffs lost control over their PHI); *Main Line*, 2024 WL 1829564 (same); *RMA*, 2024 WL 1829565 (same); *Clearbrook*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127 (same); *OSS*, 2024 WL 2026976 (same); *Nittany*, 2024 WL 2093148 (same).

Moreover, Plaintiffs' regulatory claims independently confer standing. Plaintiffs allege their data was negligently disclosed; that is, that Defendant owed them a duty, and that the disclosure of their data breached that duty and caused them harm. Compl. ¶¶ 206-227. Their negligence *per se* claim specifically alleges that the duty Defendant owed them to safeguard their data is informed by various statutory provisions, including the FTC Act and HIPAA section 5 of the Federal Trade Commission Act ("FTC"). *Id.* ¶¶ 217-223. Defendant's breach of this duty caused Plaintiffs harm, as described above. This sufficiently alleges standing. *Clemens*, 48 F.4th at 158 (reversing district court and allowing negligence per se claim).

In *Horizon*, plaintiffs' laptops containing highly sensitive and private personal information were stolen. 846 F.3d at 630. The complaint alleged that their insurance company, Horizon, failed to maintain the confidentiality of the plaintiffs' information, giving rise to a cause of action under the Fair Credit Reporting Act (FCRA). *Id.* at 629. It did not allege that the false information was actually used to the plaintiffs' detriment. *Id.* The district court dismissed the case, concluding that "standing requires some form of additional 'specific harm' beyond 'mere violations of statutory and common law rights.'" *Id.* at 634. The Third Circuit reversed based on its own precedent in *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015), and *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016), citing the principle that "Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private." *Horizon*, 846 F.3d at 636 (quotation marks omitted) (quoting *Nickelodeon*, 827 F.3d at 274)." As Third Circuit noted in

*Nickelodeon*, "unauthorized *disclosures* of information" have long been seen as injurious. 827 F.3d at 274 (emphasis added).

Plaintiffs allege the unauthorized dissemination of their own private information—the very injury that the FTC Act and HIPAA are intended to prevent. For example, Plaintiffs bring a claim of negligence *per se*, using the FTC and HIPAA to inform a standard of care—a distinct and allowable claim in Pennsylvania and as recognized by this district. *See Opris*, 2022 WL 1639417, at *10; *Wawa*, 2021 WL 1818494, at *7; *Rutter's*, 511 F. Supp. 3d at 532. There is thus a *de facto* injury that satisfies the concreteness requirement for Article III standing. *See In re Nickelodeon*, 827 F.3d at 274 (concluding that the "unlawful disclosure of legally protected information" in and of itself constitutes a "*de facto* injury"); and *Horizon*, 846 F.3d at 640-641. Accordingly, Defendant's argument that Plaintiffs allege no injury invites reversible error. *Id.*

"[T]he law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). The decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) supports this analysis. There, the Supreme Court recognized that harm must be "physical harm, monetary harm, or various intangible harms[,]" which may include "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* at 2204 (emphasis added) (citation omitted). Thus, Plaintiffs have alleged injuries that are "traditionally recognized as providing a basis for lawsuits in American courts." *Id.*

**B. Plaintiffs Have Standing to Seek Injunctive Relief**

Next, Defendant essentially posits that because Plaintiffs now know about trackers, they are free to no longer use Defendant's website, and therefore, they cannot show future injury. According to Defendant's logic, no plaintiffs in any case would ever have standing to bring injunctive relief because once a plaintiff becomes privy to the harm that befell them, the plaintiff

(not the Defendant) can simply change the course of his or her behavior. The Court should reject this highly unpersuasive line of reasoning, as well as the line of cases cited by Defendant in support.

In the first case cited by Defendant, *McNair V. Synapse Group, Inc.,* 672 F.3d 213 (3d. Cir. 2012), the court held the plaintiffs did not have standing to bring injunctive relief against a magazine company for marketing its magazines in a deceptive way where the plaintiffs were no longer customers of the magazine. The court grounded its reasoning in the fact that the plaintiffs were former customers, not current customers. *Id.* at 224. The court reasoned the plaintiffs had "effectively acknowledged that they, unlike the class members they [sought] to represent, [were] not Synapse customers and [were] thus not currently subject to Synapse's allegedly deceptive techniques for obtaining subscription renewals." *Id.* The court therefore concluded that "[u]nless [the plaintiffs] decide[d] to subscribe again, then, there is no reasonable likelihood that they [would] be injured by those techniques in the future. They do not allege that they intend to subscribe again." *Id.*

The court in *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.,* 903 F.3d 278 (3d Cir. 2018) relied on *McNair* in concluding that a plaintiff could did not have standing to seek injunctive relief against Johnson & Johnson because, since the plaintiff was aware of the risks that baby powder presented, she could simply choose to no longer buy baby powder from Johnson & Johnson. The court concluded the plaintiff was therefore not at risk of being "deceived again" into buying baby powder and did not have standing to pursue injunctive relief. 903 F.3d at 292. *Silva v. Rite Aid Corp.* arrived at the same conclusion about nutritional supplements sold at Rite Aid. 416 F. Supp. 3d 394, 400 (M.D. Pa. 2019).

The allegations here are far from those in *McNair, In re Johnson & Johnson,* and *Rite Aid.*

Here, unlike the "former" customers in *McNair,* Plaintiffs are current patients of WGH. Furthermore, Plaintiffs do not have a realistic choice to merely "stop using" WGH's website, because, as Plaintiffs allege, the hospital serves its patients through its online platforms. Compl. ¶ 38.

And unlike the plaintiffs in *In re Johnson & Johnson* and *Rite Aid*, Plaintiffs here are not merely consumers who now have the option avoiding purchasing a product they claimed was deceptively marketed or advertised. Plaintiffs are patients, who in some cases (such as Plaintiff Brunecz) have had long-standing patient-provider relationships with Defendant. While Plaintiffs acknowledge in their Complaint that no trackers were installed at the time of filing the First Amended Complaint, dozens of AdTech marketing products and tracking platforms exists, and Plaintiffs have no way of knowing whether and when Defendant will again attempt to test the legal and ethical boundaries of implementing certain tracking technologies like it did with Facebook and Google. Is Defendant suggesting Plaintiffs find another healthcare provider?

Finally, for reasons discussed above, this case is nothing like *BPS Direct*, a case that focused on two retailers, Bass Pro Shops and Cabela's, use of tracking technology. It is self-evident how the use of tracking technology by a trusted healthcare provider is vastly different from a recreational outdoor retailer like Bass Pro Shops. The court is *BPS Direct* recognized this when it drew this critical distinction, noting the plaintiffs "[did] not plead the retailers shared highly sensitive personal information such as medical diagnosis information or financial data from banks or credit cards." 705 F. Supp. 3d at 340. The *BPS Direct* decision was grounded in its conclusion that website users of an outdoor recreation retailer "[could not] plead after two attempts disclosing personal credit card, financial, bank account or **medical information** possibly arising from a purchase from their websites." *Id*. Defendant's reliance on *BPS Direct* for the proposition that

Plaintiffs, who are patients, "are now well aware of the alleged risks involved using Defendant's website" is therefore entirely unfounded. The court should reject Defendant's feeble attempt to characterize the nature of the *BPS Direct* plaintiffs to Plaintiffs here. Because Plaintiffs are current patients of Defendant and who have not alleged they intend to discontinue care at Defendants', Plaintiffs have standing to seek injunctive relief.

## III. PLAINTIFFS SUFFICIENTLY ALLEGED NEGLIGENCE

Plaintiffs properly alleged negligence when they alleged that Defendant owed a duty to exercise reasonable care in handling and using Plaintiffs' and Class Members' Private Information, that it breached this duty by failing to exercise reasonable care in the handling and securing of Private Information, and as a direct and traceable result of Defendant's negligence, Plaintiffs have or will suffer monetary damages, inappropriate advertisements and use of their Private Information for advertising purposes, and increased risk of future harm. Compl. ¶¶ 212-227. These allegations are sufficient under Pennsylvania law. *See e.g.*, *Nittany Health System,* 2024 WL 2093148, (allowing negligence claim); *Main Line Fertility,* 2024 WL 1829564 (rejecting the argument that HIPAA imposes no duty on healthcare provider defendant); *OSS Orthopaedic Hosp*., 2024 WL 2026976 (same).

### A. Plaintiffs Sufficiently Alleged Defendant Had a Common Law Duty to Protect Patient Data, Causing them Harm

Whether a duty has been breached is a question "typically reserved for the factfinder." *Charlie v. Erie Ins. Exch.*, 100 A.3d 244, 260 (Pa. Sup. Ct. 2014). "The nature of the duty which is owed in any given situation hinges primarily upon the relationship between the parties at the time of the plaintiff[]s injury." *Toro v. Fitness Int'l LLC,* 150 A.3d 968, 977 (2016). The Pennsylvania Supreme Court has held that those who collect personal information owe a duty to exercise reasonable care in protecting that information. *Dittman*, 196 A.3d 1036 (holding employer

owed duty to employees); *see also Wawa*, 2021 WL 1818494, at *5 (denying motion to dismiss negligence claim because defendant owed a duty to protect the financial information of its customers under *Dittman*); *Opris*, 2022 WL 1639417, at *5 (applying Pennsylvania law and finding that a fertility clinic "owed its patients a duty of care to protect their PII and PHI" from third parties).

Defendant argues that Plaintiff has failed to allege that Defendant owed a legal duty to Plaintiffs, but that argument is foreclosed by the Pennsylvania Supreme Court's decision in *Dittman.* There, the Court held that those who collect personal information owe a legal duty to exercise reasonable care in protecting that information from unauthorized disclosure. *Id*. at 1038 (recognizing legal duty of employer "to exercise reasonable care to safeguard its employees' sensitive personal information stored by the employer on an internet-accessible computer system."); *see also Wawa*, 2021 WL 1818494, at *5 (defendant owed a duty to protect customers' financial information from data breach); *Opris*, 2022 WL 1639417, at *5 (applying Pennsylvania law, holding that fertility clinic "owed its patients a duty of care to protect their PII and PHI" from unauthorized disclosure). In exercising the "affirmative conduct" of collecting and storing its employees' data on its computers, the *Dittman* defendant owed those employees a duty to "exercise reasonable care to protect them against an unreasonable risk of harm arising out of that act." *Id.* at 1047. Likewise, here Defendant owed Plaintiffs a legal duty to exercise reasonable care to protect their private information, which it acted affirmatively to collect and promised to protect in its Privacy Policies. Thus, Plaintiffs have alleged a duty. *See Thomas Jefferson*, 2024 WL 4350328, at *6 (Plaintiffs plausibly alleged a duty of care where they relied on a hospital's privacy policy).

*Santoro v. Tower Health*, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024), cited by Defendant, does not disturb that conclusion. Although the court in *Santoro* upheld dismissal of the plaintiff's

negligence claim, it did so because plaintiff failed to direct the court to exactly what information the Meta Pixel collected. Here, unlike in *Santoro,* Plaintiffs have spelled out exactly what types of information Plaintiffs searched and what WGH in turn sent to Meta: Plaintiff Brunecz alleged he used WGH's website and the patient portal to search for a doctor for a colonoscopy, and thereafter, his Facebook was immediately bombarded with advertisements for "Cologuard." Compl. ¶¶ 114-116. Plaintiff Chapman alleged she WGH sent Facebook information about her maternity care. *Id.* ¶¶ 124-126. Plaintiffs have thus sufficiently alleged duty, causation and damages under the guidelines set forth in *Dittman, Santoro,* and *Thomas Jefferson. See Thomas Jefferson,* 2024 WL 4350328, at *6 ("Plaintiffs have sufficiently pleaded that the disclosure of Plaintiffs' [PHI] to Meta to allow Defendant and Meta to tailor advertisements on their respective web properties impaired Plaintiffs' control over their IIHI, and would not have occurred without Defendant's installation of Meta's Collection Tools MyJeffersonHealth.").

## IV. PLAINTIFFS SUFFICIENTLY ALLEGED NEGLIGENCE PER SE

Plaintiffs adequately stated a claim for negligence *per se* when they alleged, as an alternative to their other negligence claim, that Defendant was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of her data. Compl. ¶¶ 215-27. Courts have upheld such claims repeatedly. *See*, *e.g.*, *RMA*, 2024 WL 1829565; *Clearbrook*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127; *OSS*, 2024 WL 2026976; *St. Clair*, 2024 WL 3375090; *Opris*, 2022 WL 1639417 at *8; *see also Roma*, 2024 WL 3678984, at *10 (allowing the "FTC Act as a hook for negligence per se").[3]

Defendant asks for dismissal of this claim, making three arguments: 1) negligence per se is not a standalone claim; 2) HIPAA and the FTC are not safety statutes so cannot support

[3] Courts across the country allow negligence per se claims on allegations like Plaintiffs' here. *See* Exhibit A-3 (collecting cases allowing negligence *per se* claims).

negligence per se; and 3) Plaintiffs' factual allegations fall short of violating HIPAA and the FTC. MTD. p. 19-25.

Defendant's first and second arguments—for which it cites **no** Pennsylvania authority—are quickly discarded as a matter of law. Plaintiffs' negligence *per se* claim is asserted "**as alternative** to their other negligence claim." Compl. ¶ 216 (emphasis added). This is allowable in Pennsylvania in this exact circumstance, which courts have implicitly recognized HIPAA and the FTC as safety statutes. *See*, *e.g.*, *RMA*, 2024 WL 1829565 (allowing negligence *per se* based on HIPAA and the FTC act) *Clearbrook*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127 (same); *OSS*, 2024 WL 2026976; *St. Clair*, 2024 WL 3375090 (same); *Black*, 2023 WL 11282161 (allowing negligence *per se* based on the FTC Act); *Opris*, 2022 WL 1639417 (same); *Reese*, 2021 WL 12258536 (same); *Henck*, 2022 WL 22702619 (same); *Pohlhaus*, 2022 WL 22702620 (same); *Roma*, 2024 WL 3678984 (same).

Defendant thirdly argues that Plaintiff's allegations cannot support a claim of negligence *per se* based on HIPAA or the FTC. Defendant's arguments improperly ignore Plaintiffs' allegations, which are not merely conclusory and which must be accepted as true at this stage.

Defendant again asserts its *Becerra* argument, which Plaintiffs already addressed above. Defendant's scant citations—nearly all of which are from other jurisdictions—are poor support for its argument.

First, Defendant cites *Hartley v. Univ. of Chicago Med. Ctr.*, 2023 WL 7386060, at *3 (N.D. Ill. Nov. 8, 2023). But Defendant ignores the same court's later holding that Plaintiff plausibly alleged Defendant acquired and disclosed Private Information:

> Paragraph 256 alleges that [defendant] disclosed that [plaintiff] was seeking specific medical specialists, ¶ 158 alleges that she sought to obtain prescriptions of various medications, ¶ 160 alleges that she was seeking information about sexually transmitted diseases, and ¶ 167 alleges that Meta sold this information to entities

> that sent her advertisements for medications that were relevant to specific conditions for which she was being treated. Accordingly, Plaintiff has now added allegations that are specific to herself, the lack of which was the reason for the dismissal of the FAC.

*Hartley*, 2024 WL 1886909, at *2. Plaintiffs alleged just that here: they alleged that Defendant disclosed their "seeking of medical treatment," "the specialties [and] names of the medical providers [they] searched for and viewed," "searches for treatments and medical information" including related to their specific medical issues, that the Third Parties like Meta sold this information to fourth parties "for the purposes of retargeting and future marketing . . . to create targeted advertisements based on the medical conditions and other information disclosed to Defendant. Compl. ¶¶ 16, 115, 120, 125, 130. Under Defendant's authority, Plaintiffs' allegations are sufficient.

Defendant cites *Thomas Jefferson*, 2023 WL 7017734. But just as in *Hartley*, the court in *Thomas Jefferson* later found the following allegations sufficient:

> (1) signing-up for a patient portal; (2) signing-in or -out of a patient portal; (3) taking actions inside a patient portal; (4) making, scheduling, or participating in appointments; (5) exchanging communications relating to doctors, treatments, payment information, health insurance information, prescription drugs, prescriptions, side effects, conditions, diagnoses, prognoses, or symptoms of health conditions; (6) conduct a search on Jefferson Health's web properties; and (7) other information that qualifies as "personal health information" under federal and state laws.

*Thomas Jefferson*, 2024 WL 4350328, at *1. Under those allegations, ""the unauthorized disclosure of actual private medical information . . . is what Plaintiffs allege[d]." *Id.* at *7. And those are the same allegations as Plaintiffs' here. Plaintiffs alleged disclosure of information related to: (1) their "use [of] the Patient Portal" (Compl. ¶¶ 116, 126); (2) "access[ing] a patient portal" (*id.* ¶ 7); (3) "information regarding [their] patient portal activity" (*id.* ¶¶ 120, 130); (4) "when they made an appointment" (*id.* ¶ 17); (5) communications related to "health information.

. . physicians," (*id.* ¶ 7) "searches for treatments and medical information . . . searching for treatment information" (*id.* ¶¶ 115, 125) "specialties [and] names of medical providers . . . [and] medical services [they] viewed" (*id.* ¶¶ 120, 130); (6) "search for services" (*id.* ¶ 7); and (7) other information that qualifies as personal health information such as their "seeking of medical treatment" and "status[es] as []patient[s]. (*id.* ¶¶ 120, 130). Under these allegations, which must be accepted as true, and according to Defendants' own citation, Plaintiffs' claims must therefore survive.

Defendant also cites *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018). But that case is in no way dispositive here. *Smith* involved only claims against Facebook. The court held that the information collected by Facebook from the sites, like browser settings, language, and operating system, was not "protected health information." *Id.* *Smith* did not involve allegations against a healthcare provider brought by a patient, as Plaintiffs bring here. Compl. ¶ 6. Nor did *Smith* involve disclosures of PHI belonging to a specific patient that could only be known by their medical provider, such as when the patient scheduled an appointment and what the nature of the appointment was. *Id.* ¶¶ 17, 115, 116, 125, 126. And in analogous cases, courts around the country reject healthcare providers' attempt to cite to *Smith* as dispositive. *See, e.g, Kane v. Univ. of Rochester*, 2024 WL 1178340, at *6 (W.D.N.Y. Mar. 19, 2024) (rejecting *Smith*, because in that case "Facebook did not collect 'protected health information' and was therefore not subject to HIPAA's strict disclosure requirements . . . Here, however, because Defendant's website transmits data from which it is possible to identify a specific individual who is seeking treatment from a specific physician, the information does relate to the provision of healthcare to an individual."); *see also Kurowski IV*, 2024 WL 3455020, at *3 ("[I]n contrast to the plaintiffs in *Smith*, [plaintiff] alleges that [defendant] intercepted and transmitted specific information regarding her

appointments, providers, health conditions, and care as [defendant's] patient. This type of individualized patient data is not general, publicly accessible health information); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. Dec. 22, 2022) ("This case is different than *Smith*. Unlike the "general health information that is accessible to the public at large" . . . the Pixel captures information that connects a particular user to a particular healthcare provider—i.e., patient status—which falls within the ambit of information protected under HIPAA.).

As opposed to *Santoro*, 2024 WL 1773371, as already explained, Plaintiffs have alleged far more than "conclusory or bare-bones allegations." MTD p. 23.

Defendant also argues that IP addresses cannot be Personally Identifiable Information and cites several cases. But Defendant and those cases ignore the plain language of HIPAA regulations, dictating that "A covered entity may determine that health information is not individually identifiable health information **only if** . . . The following identifiers of the individual or of relatives, employers, or household members of the individual, are removed [including] . . . Internet Protocol (IP) address numbers." 45 C.F.R. § 164.514 (b) (emphasis added).[4] It is a logical fallacy to argue that IP addresses are not identifiable information because HIPAA requires "simply" that the entity must remove that information in order to de-identify it.

For its last argument, Defendant quotes the FTC Act and argues that Plaintiffs' allegations do not fall within that Act. Defendant cites no actual support for its argument. Rather, as quoted by Defendant, under the FTC Act, "identifying information" is any information which identifies a

[4] *See also, e.g.*, *Cooper*, 2024 WL 3586357, at *3, n. 4 ("HIPAA's Privacy Rule, codified in 42 U.S.C. § 1320, requires any "covered entity"—which includes health care providers—to maintain appropriate safeguards to protect privacy of PHI and set limits and conditions on the disclosure of PHI. Compl. ¶ 161. Of the approximately 18 HIPAA "identifiers" that are considered PII, those relevant here are names, dates related to an individual, email addresses, device identifiers, web URLs, and IP addresses.").

specific person, including a person's "name." MTD p. 25. Plaintiffs allege Defendant disclosed their "identit[ies]." Compl. ¶¶ 120, 130. This is clearly identifying information, not "mere website usage data." MTD p. 25. And these are not merely conclusory, but specific factual allegations which must be accepted as true. Under these allegations, Pennsylvania Courts uphold the legality of Plaintiffs' negligence *per se* claim. *See*, *e.g.*, *RMA*, 2024 WL 1829565 (allowing negligence *per se* based on HIPAA and the FTC act) *Clearbrook*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127 (same); *OSS*, 2024 WL 2026976; *St. Clair*, 2024 WL 3375090 (same); *Black*, 2023 WL 11282161 (allowing negligence *per se* based on the FTC Act); *Opris*, 2022 WL 1639417 (same); *Reese*, 2021 WL 12258536 (same); *Henck*, 2022 WL 22702619 (same); *Pohlhaus*, 2022 WL 22702620 (same); *Roma*, 2024 WL 3678984 (same). Because Plaintiff's allegations must be accepted as true, Defendant's Motion to Dismiss must be denied.

## V. PLAINTIFFS SUFFICIENTLY ALLEGED INVASION OF PRIVACY

Plaintiffs' allegations that Defendant secretly tracked and disclosed their Private Information fit squarely within the elements of the tort of intrusion upon seclusion as interpreted by Pennsylvania courts, sister courts in the Third Circuit, and courts throughout the United States. *See, e.g.*, *Thomas Jefferson*, 2024 WL 4350328; *St. Clair*, 2024 WL 3375090; *Clearbrook*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127; *OSS*, 2024 WL 2026976; *Main Line*, 2024 WL 1829564; *RMA*, 2024 WL 1829565.[5] Defendant's motion fails to contract this fact.

A plaintiff states a claim for invasion of privacy so long as they allege "intentional intrusion on the seclusion of their private concerns which was substantially and highly offensive to a reasonable person" and that "the information disclosed would have caused mental suffering, shame

---

[5] *See also* Exhibit A-7 (listing orders denying similar motions to dismiss privacy claims).

or humiliation to a person of normal sensibilities." *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 570 Pa. 242, 809 A.2d 243 (2002).

Defendant's argument should be rejected because Defendant cannot take issue with Plaintiffs' allegations; rather Plaintiffs' allegations must be accepted as true. Defendant argues that "mere website usage data" cannot state a claim. MTD p. 26. But Plaintiffs' allegations go far beyond this, as already discussed above. Plaintiff Brunecz pleads that Defendant tracked and disclosed his seeking medical treatment for a hernia and a colonoscopy, his status a patient at Defendants', information regarding his patient portal activity, the specialties and the names of the medical providers he searched for and viewed, the search results he clicked on and his identity via his IP addresses, his "c_user" cookie or his Facebook ID. Compl. ¶¶ 115-116, 120. Similarly, Plaintiff Chapman alleges that Defendant tracked and disclosed her seeking medical treatment for maternity care, her status a patient at Defendants', information regarding her patient portal activity, the specialties and the names of the medical providers she searched for and viewed, her searches for medical treatments and physicians, her scheduling of appointments, and her payments for treatment. *Id.* ¶¶ 125-126, 130. These allegations must be accepted as true; Defendant cannot simply replace Plaintiffs' allegations with a version that is more favorable to it. The above clearly constitutes PII as defined by the Federal Trade Commission and PHI as defined by HIPPA, and Defendant cannot argue otherwise in good faith. *Id.* ¶¶ 1-2. Defendant attempts to confuse the issue by stating Plaintiffs' claim somehow fails because they did not allege that a "particular medical diagnosis" was disclosed. MTD p. 26. Defendant cites no authority for the proposition that a "particular medical diagnosis" must be disclosed through website use to state an intrusion upon seclusion claim – none exists.

At least one Pennsylvania federal court—as well as numerous Pennsylvania state courts—has held that a healthcare provider commits an intentional intrusion when it tracks patient communications on its website without their permission. *See Thomas Jefferson,* 2024 WL 4350328 at *6-7 ("a website operator commits an intentional intrusion where the website operator tracks plaintiffs' online behavior 'without their permission to do so'"); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) (holding defendant's promise not to collect promise not to collect children's PII itself created an expectation of privacy and defendant's sharing of such PII was highly offensive in that it may have encouraged parents to permit their children to browse websites under false pretenses); *St. Clair*, 2024 WL 3375090; *Clearbrook*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127; *OSS*, 2024 WL 2026976; *Main Line*, 2024 WL 1829564; *RMA*, 2024 WL 1829565; *see also* *Brown v. United States*, 2018 U.S. Dist. LEXIS 19854, *29 (E.D. Pa. Feb. 7, 2018), *aff'd*, 823 F. App'x 97 (3d Cir. 2020) ("Plaintiff plausibly alleges [defendant] had records containing personal health information, that its employee [] had access to that [PHI…] and that [defendant's employee], presumably acting within the scope of his employment, intentionally disclosed it to his brother, who then used it for malicious purposes"). And courts across the country find disclosure of this information is highly offensive. *See* Exhibit A-7.

Moreover, the Pennsylvania Supreme Court has explicitly recognized that unauthorized disclosure of medical information can be highly offensive to a reasonable person. *See* *Burger v. Blair Med. Assocs., Inc.*, 964 A.2d 374, 379 (2009) (recognizing that "unauthorized disclosure of . . . drug use might be regarded as highly offensive to a reasonable person"). In addition, courts have held that a healthcare providers' implementation and use of tracking technologies, like those Defendant used here, is intrusive and highly offensive in nature. *See Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 974 (N.D. Cal. Aug. 25, 2023) ("Communications made in the context of a

patient-medical provider relationship are readily distinguishable from online communications in general[.] . . . 'One can think of few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up.'") (quoting *In re Meta Pixel*, 647 F. Supp. 3d at 799). Here, Plaintiffs met their burden for pleading invasion of privacy when Defendant disclosed their PHI without their consent.

Further, the cases cited by WGH, *Santoro*, 2024 U.S. Dist. LEXIS 74348, *15 and *Smith v. Facebook*, 745 Fed. Appx. at 9, do not support its position. First, in *Santoro*, the court did not hold allegations like Plaintiffs' were a "characterization" of "usage data" insufficient to support an invasion of privacy claim, as Defendant suggests. MTD p. 26. In fact, rather than discussing whether the PHI disclosed there was PHI or "usage data," the *Santoro* court was analyzing whether the plaintiff's allegations "set forth enough factual matter to cross [the] threshold to show the conduct was 'highly offensive.'" *Santoro,* 2024 WL 1773371 at 6 (E.D. Pa. Apr. 24, 2024). Indeed, the court clarified the type of allegations that would establish highly offensive conduct to constitute an invasion of privacy claim, first citing a case where the plaintiff entered data relating to her heart issues and high blood pressure in the defendant hospital's MyChart portal and later received advertisements on Facebook for high blood pressure medication. *Id*. at 7 (quoting *Doe v. Regents of Univ. of California*, 672 F.Supp.3d 813 (N.D. Cal. 2023). The *Santoro* court then cited a matter where the plaintiffs alleged that their medical conditions and statutes as patients of certain doctors were tracked on the defendant hospital's website and transmitted to Meta. *Id.* (citing *Cousin v. Sharp Healthcare*, 702 F.Supp.3d 967 (S.D. Cal. 2023)).

The allegations cited by the *Santoro* court as examples of highly offensive disclosures in violation of a privacy policy mirror the allegations in Plaintiffs' Amended Complaint. *Santoro,* 2024 WL 1773371 at 7. Plaintiff Brunecz pleads that he searched Defendant's website for

"treatments and medical information" such as "topics related to finding a doctor for hernia treatment," used the Website to scheduling appointments, search for treatment information and doctors, pay for medical services, research treatments, to use the Patient Portal, and to look for a doctor for a colonoscopy. Compl. ¶¶ 115-116. After he used Defendant's Website, Plaintiff Brunecz alleges "his Facebook feed was immediately bombarded with advertisements for 'Cologuard.'" *Id.* ¶ 116. Similarly, Plaintiff Chapman pleads she received maternity care at Defendants' and used its Website "to find a doctor, to schedule appointments, to search for treatment information, to pay for medical services" and to use the Patient Portal. *Id.* ¶¶124-126. Thereafter, Plaintiff Chapman alleges that "medical adds appeared on her Facebook feed. Specifically, advertisements for weight loss products." *Id.* ¶ 126. Accordingly, contrary to WGH's motion, the *Santoro* matter supports Plaintiffs' argument that they have stated a claim for invasion of privacy.

Second, Defendant's reliance on *Smith v. Facebook*, 262 F.Supp.3d at 943, should be disregarded because, as set forth *supra*, the data WGH disclosed to Facebook was not simple "public browsing" data. Rather, it was sensitive PHI that Plaintiffs communicated to Defendant, their medical provider. Compl. ¶¶ 115-116, 124-126,164. Again, *Smith* involved a lawsuit against Facebook and sites like "www.cancer.net" brought by Facebook users who visited such sites. *Smith*, 262 F. Supp. 3d at 947. *Smith* did not involve allegations against a healthcare provider brought by a patient, as Plaintiffs do here, or disclosures of PHI belonging to a specific patient that could only be known by their medical provider. Compl. ¶¶ 115-116, 124-126.

Because Plaintiffs have sufficiently alleged that Defendant tracked and transmitted their highly sensitive PHI, shared that PHI with Facebook and other unauthorized third parties, and that such disclosure was "highly offensive," they have stated a claim for intrusion upon seclusion.

Indeed, courts commonly find "[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person, and I see no reason to deviate from that norm." *Doe v. Regents of the Univ. of Cal*., 2023 WL 3316766, at *6 (N.D. Cal. May 8, 2023) (denying motion to dismiss common law intrusion claim).

Thus, Defendant has failed to meet its burden and its motion must be denied.

## VI. Plaintiffs Sufficiently Alleged Breach of Implied Contract

In Pennsylvania, a claim for breach of contract requires "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Rutter's*, 511 F.Supp.3d at 514. Here, Plaintiffs sufficiently alleged a contract implied in Defendant's conduct: Plaintiffs provided WGH monetary compensation in exchange for medical care. Compl. ¶¶ 122, 130, 239. As a condition of receiving that care, Defendant required its patients to furnish their PHI, providing in return promises or terms of the contract—implied, implicit, elevated duties as healthcare provider, and good faith duties—to keep that private, confidential, health information secure and confidential. *Id.* ¶¶ 23, 71-77. These terms were set forth in Defendant's Privacy Policies and implied by conduct. *Id.* When, in the course of conduct, healthcare providers require patients to provide confidential information, the implied promise is they will keep *confidential* information *confidential*—in the same condition received. *See Doe v. Tenet Healthcare Corp.*, 2024 WL 1756075 (D. Mass. Apr. 23, 2024) (denying defendant's motion to dismiss plaintiff's breach of implied contract claim where the plaintiff "paid [the defendant] for healthcare services with the understanding that [the defendant] would maintain Plaintiff's Private Information confidentially, as expected in a physician-patient relationship."). Defendant failed to do this, and thus breached its contractual obligations. Indeed, as multiple Pennsylvania courts have recently recognized, Plaintiffs' allegations are sufficient to state a claim under Pennsylvania law. *See, e.g., St. Clair*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 140, *1; *Mount Nittany*, 2024 WL 2093148;

*Clearbrook,* 2024 Pa. Dist. & Cnty. Dec. LEXIS 127, *1; *RMA*, 2024 Phila. Ct. Com. Pl. LEXIS 8, *1; *Main Line*, 2024 WL 1829564.[6]

WGH first argues Plaintiffs fail to allege course of conduct because "[t]here are no allegations whatsoever of conversations, discussions, or transactions about the alleged privacy expectations at issue." MTD p. 27-28. However, this is demonstrably false. Plaintiffs' allege they: (1) accessed Defendant's Online Platforms at its direction and encouragement, (2) they provided their PHI to Defendant and trusted that the information would be safeguarded according to Defendant's Privacy Policy and the law, (3) that they reasonably expected that their online communications with Defendant were confidential, solely between themselves and Defendant, and that, as such, those communications would not be transmitted to a third party, and (4) that they paid Defendant for medical services and the services they paid for included reasonable privacy and data security protections for their PHI, which they did not receive due to Defendant's illegal disclosures. Compl. ¶¶ 71-77, 117, 120, 122, 127, 130, 132.

Defendant asserts Plaintiffs have not alleged meeting of the minds because "Plaintiffs have not alleged that Defendant promised to keep the website usage data private" and "Plaintiffs have not alleged that they knew that they were providing website usage data to Defendant." MTD p. 28. This argument is baseless. First, in the section of their Amended Complaint entitled "Defendant Violated its own Privacy Policies," Plaintiffs detail Defendant's repeated promises to safeguard its patients' PHI and not to disclose that PHI for marketing purposes without their consent. Compl. ¶¶ 71-77. Specifically, Plaintiffs allege "Defendant promises: '[n]ormally, we will require your signed authorization before disclosing your medical information outside the hospital, unless it is

[6] *See* Exhibit A-5 (listing additional orders denying similar motions to dismiss contract claims).

required by law.'" *Id.* ¶ 74. Second, as discussed above, Plaintiffs allege they provided their PHI to Defendant through its Website, including: searches for treatments and medical information, searches for topics related to finding a doctor for hernia treatment, a colonoscopy, and maternity care, information on scheduling appointments, searching for treatment information, paying for treatments, scheduling appointments, and using the Patient Portal. *Id.* ¶¶ 115-116, 125-126. Defendant fails to explain how such allegations do not establish that that Plaintiffs knew they were providing their PHI to Defendant.

Defendant then falsely argues that there are no "allegations about the 'essential terms' of the contract because Plaintiffs did not allege what Defendant's obligations were." MTD p. 28. Again, this is false. Plaintiffs allege that Defendant's Privacy Policies *do not* permit it to disclose its patients' PHI to third-parties uninvolved in their treatment for marketing purposes, and in fact expressly forbid this practice via the statement, "[n]ormally, we will require your signed authorization before disclosing your medical information outside the hospital." Compl. ¶¶ 73-74.

Thus, Plaintiffs have properly alleged appropriate assent and acceptance, manifest in Defendant's offer of medical services and confidentiality of information, and Plaintiff's acceptance of that offer by providing monetary compensation and confidential information. *Id.* ¶¶ 23, 117-119, 122, 127-129, 130, 132, 239. Finally, Plaintiffs allege injury arising from the contract, as outlined above. *Id.* ¶¶ 122, 132. Defendant offers no authority suggesting Plaintiffs' allegations are insufficient in this regard.

In fact, the case cited by Defendant supports Plaintiffs' position, not Defendant's. In *Rutter's*., 511 F.Supp.3d, a case involving a data breach, the defendant argued, as Defendant does here, that "no meeting of the minds" to protect the plaintiff consumers' data occurred. 511 F. Supp. 3d at 534. The court disagreed, and held that that plaintiffs:

> … submit more than mere conclusory allegations—they allege that [the defendant] invited Plaintiffs to use their credit and debit cards at its establishments and that Rutter's privacy policy, at least prior to the data breach, said it "take[s] security measures to protect against unauthorized access to or unauthorized alteration, disclosure, or destruction" of the consumer data that Rutter's "maintain[s]." [internal citations omitted]…*Plaintiffs have referenced company-specific documents and policies to support a promise implied by the parties' conduct*. *Id.* at 534 (emphasis added).

As in *Rutter's*, Plaintiffs cite the promises made in Defendant's Privacy Polies to establish the promises implied in the parties' conduct. Compl. ¶¶ 23, 71-77, 122, 130, 239. Pennsylvania law clearly supports allowing this claim, as numerous of its Courts for Common Pleas have recently held. *See* Exhibit A-5. Therefore, Defendant has failed to meet its burden. Defendant is clearly on notice of this claim and its Defendant's motion must be denied.

## VII. PLAINTIFFS SUFFICIENTLY ALLEGED UNJUST ENRICHMENT

Plaintiffs sufficiently alleged unjust enrichment—they pleaded they conferred their PHI upon Defendant, who promised it would not disclose their PHI, that Defendant then disclosed their PHI, and that it would be inequitable for Defendant to retain the benefit of that disclosure because it obtained Plaintiffs' PHI under the premise of the promise of not disclosing it. Compl. ¶¶ 26, 119, 122, 129, 132, 251, 253; *Schenck v. K.E. David, Ltd.*, 446 Pa.Super. 94, 666 A.2d 327 (1995) (the elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value"). These allegations are sufficient under Pennsylvania law, as Pennsylvania courts have consistently recognized. *See, e.g., St. Clair*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 140, *1; *OSS*, 2024 WL 2026976; *Mount Nittany*, 2024 WL 2093148; *Clearbrook*, 2024 Pa. Dist. & Cnty. Dec.

LEXIS 127, *1; *RMA*, 2024 Phila. Ct. Com. Pl. LEXIS 8, *1; *Main Line*, 2024 WL 1829564 (same).[7]

WGH recycles is incorrect claim that the PHI Plaintiffs' provided Defendant was "website usage data." MTD p. 29. As set forth *supra*, this is false. Plaintiffs' Amended Complaint sets forth detailed facts regarding Defendant's disclosures of their PHI, such as that they used Defendant's Website to search for treatment information regarding for specific conditions, to find physicians to treat those conditions, and that Defendant subsequently disclosed their identity, their status as patients, their seeking of medical treatment, their health conditions and the treatment they sought, and their patient portal activity, to Facebook and other third parties, without their knowledge or consent. Compl. ¶¶ 8, 68-70, 76-78, 108-113, 120, 130.

Defendant next asserts that Plaintiffs did not confer a benefit on Defendant and that Plaintiffs "have not alleged that any of their payment for care as patients went towards getting data privacy and security." MTD p. 29. Defendant is wrong. Plaintiffs allege they paid Defendant for medical services and "the services [they] paid for included reasonable privacy and data security protections for [their] Private Information, but Plaintiff[s] did not receive the privacy and security protections for which [they] paid, due to Defendant's Disclosures." Compl. ¶¶ 122, 132, 239. The Court should follow the recent decision in *Thomas Jefferson,* 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024), where the court denied the defendant's motion to dismiss the plaintiff's unjust enrichment claim in a case involving the Meta Pixel, holding:

> Defendant further argues that there was no benefit conferred on it to retain. This argument is similarly unpersuasive. Plaintiffs have plausibly pleaded that Defendant was enriched through the collection of Plaintiffs' [PHI]. At minimum, *Plaintiffs have plausibly alleged that by receiving Plaintiffs' data and disclosing it to Meta to tailor advertisements related to Plaintiffs' medical needs or status as a*

[7] *See also* Exhibit A-6 (listing orders denying similar motions to dismiss unjust enrichment claims).

> *patient of Defendant, Defendant may have received the benefit of this targeted advertisement*. (emphasis added)

Finally, to support its position, Defendant cites *Carlsen v. GameStop, Inc.*, 833 F.3d 903 (8th Cir. 2016) and *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016). Neither case is helpful to Defendant. First, *GameStop* is off point. The plaintiff in that case alleged that the defendant was unjustly enriched when it shared the plaintiff's "unique Facebook ID and Game Informer browsing history to Facebook" in violation of the defendant's privacy policy. *Carlsen*, 833 F.3d at 907. But this case is not about video games. This is a case about patients communicating private healthcare information to their trusted healthcare provider on a website the provider encouraged its patients to use, a fact that *GameStop* did not analyze. Compl. ¶¶ 114-134. Further, the court in *Lewert v. P.F. Chang's China Bistro* did not dismiss the plaintiff's "unjust enrichment claim based on alleged data privacy violations" as Defendant claims. MTD p. 29. Instead, in analyzing whether the plaintiff data breach victims had standing to bring their claims, the court held "that the plaintiffs have alleged enough to support Article III standing." *Lewert*, 819 F.3d at 970. Accordingly, *Gamestop* and *Lewert* are irrelevant and unpersuasive.

Defendant has again failed to meet its burden. Defendant is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses. Defendant's motion must be denied.

## VIII. PLAINTIFFS SUFFICIENTLY ALLEGED BREACH OF FIDUCIARY DUTY

Defendant, a hospital, breached its fiduciary duty by tracking and transferring patient information to third parties for advertising purposes without consent. Compl. ¶¶ 8, 68-70, 76-78, 108-113, 120, 130. These allegations are sufficient under Pennsylvania law. *See, e.g., St. Clair*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 140, *1; *OSS*, 2024 WL 2026976; *Mount Nittany*, 2024 WL 2093148; *Clearbrook*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127, *1; *RMA*, 2024 Phila. Ct. Com.

Pl. LEXIS 8, *1; *Main Line*, 2024 WL 1829564 (same). Courts across the country have found similar claims have merit.[8]

To plead a claim for breach of fiduciary duty, "a plaintiff must first establish that a fiduciary or confidential relationship existed." *DePrizio v. LTS Realty Co.*, 3:05-CV-02273, 2006 WL 8449808 (M.D. Pa. Aug. 24, 2006) *(citing Dinger v. Allfirst Fin., Inc.*, 82 Fed.Appx. 261 (3d Cir. 2003)).In addition to the existence of a fiduciary or confidential relationship, a claim for breach of fiduciary duty has the following elements: "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff...; (2) []injury; and (3) that the agent's failure to act solely for the plaintiff's benefit ... was a real factor in bringing about plaintiff's injuries." *Id.* (quoting *Dinger*).

Defendant contends that "[v]isiting a website alone cannot create a fiduciary relationship." MTD p. 30. However, this argument ignores Plaintiffs' allegations. First, Plaintiffs do not allege a fiduciary relationship based on their "visiting a website" but via their status as *patients* of Defendant, their trusted healthcare provider. Compl. ¶¶ 118-121, 127-129, 159, 162, 258-259. Pennsylvania courts have characterized the doctor-patient relationship as one where a fiduciary relationship exists under Pennsylvania law. *Opris*, 2022 WL 1639417, at *11 (quoting *Doe v. Liberatore*, 478 F.Supp.2d 742, 767 (M.D. Pa. 2007) (noting the "higher level associations involved in fiduciary relationships such as attorney and client, doctor and patient, or clergy and penitent."); *see also Haddad v. Gopal, 2001 PA Super 317, ¶ 5, 787 A.2d 975, 981 (Pa. Super. Ct. 2001)* (healthcare providers "have an obligation to their patients to keep communications, diagnosis, and treatment completely confidential.")

---

[8] *See* Exhibit A-8 (listing orders denying similar motions to dismiss fiduciary duty claims).

Next, Plaintiffs have pled that that they used Defendant's website and entered their PHI, and that Defendant breached its fiduciary duty by disclosing Plaintiff and Class Members' Private Information communicated via the its Website by reporting to Facebook, *inter alia*, their status as a patient, their seeking of certain medical treatment, the doctors they searched for and viewed, their patient portal activity, their searches and the medical services search results they clicked on and their identity. Compl. ¶¶ 115-120, 125-130. Last, the Amended Complaint alleges that Plaintiffs sustained actual injury from the breach. Compl. ¶¶ 122, 132; *Weddle v. Wakemed Health and Hospitals*, 2023 WL 8369786, at *8 (N.C. Super. Dec. 4, 2023) (denying defendant's motion to dismiss breach of fiduciary duty claim where "Plaintiffs have alleged that they shared confidential information with [defendant] in the context of a physician-patient relationship and for the purpose of receiving medical care…That is enough to plead the existence of a fiduciary relationship. And the allegation that [the defendant] disclosed confidential information without authorization is enough to plead a breach.").

Defendant's reliance on *Hartley*, 2023 U.S. Dist. LEXIS 200619, *6, and *Opris*, 2022 WL 1639417, is misplaced. Unlike *Hartley*, Plaintiffs have indeed alleged a specific breach of confidentiality committed by Defendant. Compl. ¶ 159 ("A medical provider's duty of confidentiality is a cardinal rule and is embedded in the physician-patient and hospital-patient relationship."); *Id.* ¶¶ 118-121, 127-129, 162, 258-259. Further, Defendant's attempt to distinguish this case from *Simona Opris* falls short. Other than badly repeating the PHI Defendant secretly gathered and sent to Facebook was "website usage data," Defendant fails to explain why the PHI in that case, including patient names, medical diagnosis and treatment information, treating and referring physician information, and health insurance information, is different from the PHI at issue in this case. MTD p. 30. Indeed, it is substantially the same.

Next, Defendant, without support, states that the Meta Pixel is "ordinary website functionality technology." MTD p. 31. This assertion has no merit. As the Amended Complaint extensively details, the Meta Pixel "instantaneously and surreptitiously" duplicates a user's communications with the host webpage and "sends them to Facebook—traveling from the user's browser to Facebook's server." Compl. ¶ 46. Plaintiffs further alleged that such transmissions "only occur[] on webpages that contain the Pixel" and "Defendant could have chosen not to use the Meta Pixel, or it could have configured it to limit the information that it communicated to third parties, but it did not." *Id.* ¶¶ 47, 106.

Finally, the *Simona Opris* court held those plaintiffs "have established that a fiduciary relationship existed between Plaintiffs, who were patients, and Defendant, their medical provider, under Pennsylvania law. Also, Plaintiffs have pled sufficient facts to show, at this stage, that Sincera breached its fiduciary duty to safeguard their sensitive personal and medical information, or their PII and PHI, and that this conduct caused their injuries." *Opris,* 2022 WL 1639417, at 11. Defendant's conduct is no different, and the Court should deny its motion to dismiss Plaintiffs' breach of fiduciary duty claim.

## IX. PLAINTIFFS SUFFICIENTLY ALLEGED VIOLATION OF THE UTPCPL

Plaintiffs sufficiently stated a claim for breach of the UTPCPL by alleging Defendant deceptively encouraged its patients to use its website, representing that communicated information was confidential, while simultaneously breaking that confidentiality by selling patient information. Compl. ¶¶ 7, 38, 71-77, 108-109, 117, 122, 127, 132, 239.

Defendant selectively cites portions of the Amended Complaint while ignoring others to assert that there "are no allegations about how Defendant 'deceived' Plaintiffs or otherwise violated the law, only legal conclusions." MTD p. 31. This argument is baseless. As detailed

thoroughly above, Plaintiffs' plead that Defendant represented in its Privacy Policies that it would not sell or otherwise disclose their PHI for marketing purposes without their written authorization, Plaintiffs used Defendant's Website at its direction and encouragement, and Defendant proceeded to transmit Plaintiffs' PHI to Facebook. Compl. ¶¶ 71-77, 117, 120, 127, 130. This is enough, at the pleading stage, for Plaintiffs to state a UTPCPL claim under Pennsylvania law. *See, e.g., St. Clair*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 140, *1; *OSS*, 2024 WL 2026976; *Clearbrook*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127, *1; *RMA*, 2024 Phila. Ct. Com. Pl. LEXIS 8, *1; *Main Line*, 2024 WL 1829564 (same).[9]

Defendant argues Plaintiffs do not allege an ascertainable loss. MTD p. 32. To plead an ascertainable loss under UTPCPL, 73 Pa. Stat. § 201-1 *et seq*., the plaintiff "must be able to point to money or property that he would have had but for the defendant's fraudulent actions." *Riviello v. Chase Bank USA, N.A.*, 2020 WL 1129956, at *3 (M.D. Pa. Mar. 4, 2020) Here, Plaintiffs clearly point to money and property lost due to Defendant's deceptive practices. Compl. ¶¶ 122, 132; *Dibish v. Ameriprise Fin., Inc.*, 2016 PA Super 35, 134 A.3d 1079, 1089 (Pa. Super. Ct. 2016) (benefit of the bargain losses are sufficient under the UTPCPL). Defendant may consider Plaintiffs' lost time, money, and personal data insignificant, but that does not change that Plaintiffs pleaded loss. The losses, directly attributable to Defendant's misrepresentation that it would keep Plaintiff's Personal Information safe and confidential, are "ascertainable" under the UTPCPL because Plaintiffs alleged a specific loss of money and/or property resulting from the improper disclosure of PHI. *See Bernstein v. Serv. Corp. Int'l*, 2020 U.S. Dist. LEXIS 7035, *31 (E.D. Penn. Jan. 14, 2020) ("Thus, damages are speculative only if the uncertainty concerns the fact of damages

---

[9] *See also* Exhibit A-9 (listing orders denying similar motions to dismiss consumer protection claims).

rather than the amount.”). Plaintiffs have clearly pointed to “money or property that he would have had but for the defendant’s fraudulent actions.” *Benner v. Bank of Am., N.A.*, 917 F.Supp.2d 338, 360 (E.D. Pa. 2013). Defendant does not address these losses or point out any deficiency in them under the UTPCPL, only citing *Rutter’s* to argue Plaintiffs did not allege *any* loss. MTD p. 32.

However, *Rutter’s* is distinguishable. There, the court found that the plaintiffs did not allege that the defendant engaged in fraudulent conduct in violation of the UTPCPL *Rutter’s*, 511 F.Supp.3d at 540. As discussed, Plaintiffs here allege that Defendant made numerous false representations that it would not sell or otherwise disclosure their PHI without their express, written authorization. Compl. ¶¶ 71-77. Accordingly, Defendant’s reliance on *Rutter’s* is inapposite and should be disregarded.

As the above illustrates, Defendant has not met its burden, as it is clearly on notice of this claim. Defendant’s motion should be denied.

## X. PLAINTIFFS SUFFICIENTLY ALLEGED VIOLATION OF THE PENNSYLVANIA WIRETAP ACT

### A. Plaintiffs Have a Claim Under the Wiretap Statute and Sufficiently Alleged Facts in Support

Plaintiffs alleged that Defendant intentionally employed tracking technology to intercept and disclose their Protected Information to third parties without their consent, for tortious and criminal purposes, thus violating Pennsylvania’s Wiretap Act (“WESCA”). 18 Pa. Cons. Stat. Ann. § 5701 et seq.; Compl. ¶¶ 279-292. Both the Western District of Pennsylvania and several other Pennsylvania trial courts have consistently recognized the legitimacy of these allegations at the motion to dismiss stage. *See, e.g., Noom,* 2023 WL 8600576, at *9; *Schnur v. JetBlue Airways Corp.,* 2024 WL 2816552, at *9 (W.D. Pa. June 3, 2024); *St. Clair,* 2024 WL 3375090*; Main Line,* 2024 WL 1829564; *RMA,* 2024 WL 1829565*; Clearbrook*, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127; *Nittany,* 2024 WL 2093148*; OSS,* 2024 WL 2026976.

In an attempt to bypass the mounting case law supporting Plaintiffs' WESCA claim, Defendant asks the Court to delve into a deep exercise in statutory construction to consider Defendant's novel arguments about the "absurdity canon" and the "rule of lenity." MTD p. 37-40. In support of those novel and irrelevant theories, Defendant directs the Court to authorities that are unpersuasive and have no application to the facts alleged in Plaintiffs' complaint. This task is not necessary considering how the Western District of Pennsylvania has already ruled in this context. *See, e.g., Noom,* 2023 WL 8600576, at *6 (rejecting Defendant's citation to dictionary definitions of "device" and noting the Court is "ultimately bound by the statutory definition" of WESCA).

The Court should reject Defendants' transparent attempts to draw the Court's attention away from relevant authorities, and conclude, as the Court did in *Noom* and *JetBlue*, that Plaintiffs' WESCA claim should proceed to discovery.

**B. Statutory Construction: The Wiretap Statute Does Not Apply (Plaintiffs Have Sufficiently Alleged "Contents" under WESCA)**

*1. Elements*

Defendant asserts that Plaintiffs' WESCA claim fails because Plaintiffs have not plausibly alleged facts showing that the "contents" of any electronic communication were intercepted because they alleged only "record information" was intercepted and not "content." MTD p. 34-26. Defendant is wrong.

*2. Plaintiffs sufficiently alleged contents*

Defendant's description of mere "website usage data" (MTD p. 36) misstates Plaintiffs' allegations. Plaintiffs plead Defendant disclosed: their IP addresses, pages viewed, medical treatment sought, Plaintiffs' status as a patients, Plaintiffs' search terms for treatments, Plaintiffs' medical information, and much more as outlined above. Compl. ¶¶ 10, 60, 85, 98-104, 114-134.

This is certainly "content" under WESCA. *In re Google*, 806 F.3d, at 139 (reversing determination that plaintiffs did not sufficiently plead interception of the "contents" of communications.). The Third Circuit found that "queried URLs can be content…in the case of URLs that reproduce search engine inquiries." *Id.* at 138. Consistent with that finding is Defendant's cite, *In re Zynga Priv. Litig*., 750 F.3d 1098, 1108-9 (9th Cir. 2014) (a "user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication").

Defendant relies heavily on *Cook v. GameStop, Inc*., 2023 WL 5529772 (W.D. Pa. Aug. 28, 2023) in support of its position that Plaintiffs have not alleged "contents," but instead, "record information." MTD p. 35. But there, the data at issue consisted of mouse clicks, browsing activities and words typed into a search bar. *Cook*, 2023 WL 5529772 at *3-4.

Defendant's reliance on *Cook* is directly undermined by the decision in *Noom*. In *Noom,* the Court noted:

> Oliver claims that Noom, through the Session Replay Code on its website, collected personal information she input as part of Noom's 10-minute online quiz, including her height, weight, gender, age, reason for wanting to lose weight, how active she is, how often she eats, and whether she is at risk for specific health issues. (ECF No. 15, ¶¶ 44, 58, 59). This information relates to Oliver's health and weight loss goals, which is clearly part of the substantive information she was conveying to Noom. Noom argues that these allegations are too vague, and that Plaintiffs have failed to point to any specific information that Noom intercepted. (ECF No. 25, p. 14). The Court disagrees. Plaintiffs allege that Noom's Session Replay Code "records all website visitor actions[,]" which necessarily includes all of the information input when taking Noom's quiz.

2023 WL 8600576, at *7. The Court therefore held that at the 12(b)(6) stage, the allegations were "sufficient to establish that Noom intercepted 'contents' of Plaintiffs' communications." *Id.* (citing *In re Google*, 806 F.3d at 139). The facts alleged here are directly analogous to *Noom.* Plaintiffs' allegations here have no such pleading deficiency—Plaintiffs provided details about the contents

of their communications with Defendant's website, such as the fact that they provided their private information. Compl. ¶¶ 10, 60, 85, 98-104, 114-134.

Furthermore, under WESCA, Plaintiffs must simply show that Defendant intercepted electronic communication. *See Noom*, 2023 WL 8600576, at *7 (noting plaintiffs also claimed Noom intercepted users' names, emails, phone numbers, addresses, and social security numbers, and thus determining whether such information is "content" requires a more developed factual record). The Court should therefore reject Defendant's reliance on *Cook* and find that Plaintiffs have alleged Defendant intercepted "contents" under WESCA. Defendant's motion must be denied.

*3. Plaintiffs sufficiently alleged the use of a device (Defendant's tracking pixels are a "device or apparatus" under the WESCA)*

Tracking software like pixels are a "device or apparatus … that can be used to intercept a [] communication[.]" *See* 18 Pa. C.S. § 5702 ("Wiretap Act"). The Third Circuit found as much in *Popa v. Harriet Carter Gifts, Inc.*, holding that "when software reroutes communications[…] the code [is] the rerouting *device* at issue." 52 F.4th 121, 131 (3d Cir. 2022). Courts around the country agree. *See John Doe v. Meta Platforms Inc., et al.*, 2023 WL 5837443, at *7 (N.D. Cal. Sept. 7, 2023) ("I agree that *the* Pixel software is a device…"); *Yockey*, 2023 WL 5519323, at *7 ("Chat" software qualified as "electronic, mechanical or other device" under Pennsylvania's Wiretap Act); *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *12 (N.D. Cal. Dec. 22, 2022) (citing definitions of "device" and "electronic communication" under the federal wiretap act and finding "plaintiffs' internet communications on their healthcare providers' websites appear to fall squarely within the statutory definitions."); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015)) (defendant's "[s]oftware is a 'device' for purposes of the Wiretap Act."). Defendant gives the Court no reason to repudiate this mounting jurisprudence.

Defendant's assertion that "no Pennsylvania court has interpreted device to mean computer code," is misleading. *See* MTD p. 38. As noted above, the Court in *Noom* has already addressed this precise issue:

> WESCA defines "device" to mean "[a]ny device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication[.]" 18 Pa. C.S. § 5702. The term "electronic communication" is defined as "[a]ny transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system[.]" *Id.* The use of the word "any" in both definitions indicates that the class of technology contemplated by WESCA is broad. *See Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 116 (W.D. Pa. 2019).

2023 WL 8600576, at *6. The court further noted that "for a device to intercept an electronic communication, it usually must be embedded within (or connected to) the device on which the underlying communication is taking place." *Id.* The Court thus noted that "Discovery will give the parties the opportunity to develop a factual record around how Noom's website deployed its Session Replay Code and how the Session Replay Code interacted with each website user's browser and computer." *Id; see also Popa*, 52 F.4th 121, 126 ("The WESCA's use of 'intercept' thus reduces to acquiring certain communications using *a* device[,]" *not* a "different device") (emphasis added). Even if Plaintiffs were required to plead Defendant used a "different device" to intercept their PHI (they are not), Plaintiffs plead just that. Plaintiffs allege that Defendant tracked their PHI using pixels—a "different device" separate from the website server Plaintiffs believed they were communicating with. Thus, Defendant's "tangible or physical" device theory would be satisfied.

As a result, Plaintiffs' complaint establishes Defendant's pixel as a "device" under any standard.

4. *Plaintiffs' interpretation is not absurd (Discovery is needed to determine where intercepts occurs)*

Finally, Defendants argument that "Plaintiffs and Class Members who accessed Defendant's website from outside Pennsylvania cannot sue under the Wiretap Statute" is without merit.

First, Plaintiff does not allege that the intercepts occurred outside Pennsylvania. Instead, as discovery is needed to determine where the intercepts took place, Plaintiffs made no specific interception location allegations. Plaintiffs allege only that the intercepts were sent directly to third parties, from Defendant's own servers, via Defendant's implementation of tracking technologies. Compl. ¶¶ 64-70. Thus, taking Plaintiffs' allegations in the light most favorable to Plaintiffs, it is reasonable to infer that the intercepts took place in Pennsylvania because they were initiated by Defendant's own website.

Second, the court in *Popa*—which did not consider disclosure of PHI—did not refuse to extend WESCA to that plaintiff's intercepts because they may have occurred out of state. *Popa*, 426 F. Supp. at 115-19. Instead, the Court ruled that "[w]hether Navistone intercepted and transmitted Popa's data, including PII, to its server in Ohio is ultimately a question of fact the Court will not rule on at this stage." *Id.* This holding was affirmed by the Appellate Court, which explained "we still don't know exactly where Popa's browser accessed the []website and where NaviStone's JavaScript began telling the browser to communicate with its servers ... [w]hile we do not resolve this question in this appeal, we do hold that the place of interception is the point at which the signals were routed to NaviStone's servers. *Id.* at 131-132.

Here, as in *Popa*, discovery is needed to determine where Defendant rerouted the data at issue after it was intercepted. *See Strusowski v. Nemours Found.*, CV 23-00537, 2023 WL 8701299, at *3 (E.D. Pa. Dec. 14, 2023) (finding that dismissal of plaintiff's claims under WESCA

was premature as factual discovery was necessary to determine whether contents were intercepted in Pennsylvania). Thus, dismissal is premature.

## XI. THE COURT SHOULD NOT DISMISS THE AMENDED COMPLAINT WITH PREJUDICE

As already argued at length above, Plaintiffs' claims should not be dismissed. Even if the Court should find Plaintiffs' Complaint is deficient in any way, their claims should not be dismissed with prejudice, because they are entitled to the opportunity to amend. Although its argument entirely ignores Plaintiffs' allegations that, for example, Defendant "disclosed to Facebook . . . information regarding [their] patient portal activity," even Defendant recognizes that "allegations that [Defendant] shared any information from the MyPortal webpages" is "[i]mportant[]." MTD p. 5. Defendant acknowledges that "the contents of a confidential doctor's note or test result that was stored on MyPortal" would be "highly sensitive personal information." *Id.* p. 14. Thus, even if the Court were to accept Defendant's argument and dismiss the Amended Complaint, Plaintiffs would be entitled to an opportunity to cure the deficiency with patient portal allegations, and the Court should grant them leave to amend. *See, e.g., Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000) ("The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought. Circuit case law, however, holds that leave to amend must be given in this situation as well."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002) ("leave must be granted when amendment could cure the deficiency. . .").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.

Dated: October 23, 2024

Respectfully submitted by,

/s/ Amina A. Thomas
Amina A. Thomas (*Pro Hac Vice*)
Lynn A. Toops, (*Pro Hac Vice forthcoming*)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

J. Gerard Stranch, IV (*Pro Hac Vice*)
Andrew E. Mize (*Pro Hac Vice forthcoming*)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
amize@stranchlaw.com

Samuel J. Strauss (*Pro Hac Vice forthcoming*)
Raina C. Borrelli (*Pro Hac Vice forthcoming*)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
sam@straussborrelli.com
raina@straussborrelli.com

*Counsel for Plaintiff and the proposed class*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2024, a true and correct copy of the foregoing was served electronically by the Court's e-filing system on all counsel of record in accordance with the Rules of Civil Procedure.

*/s/ Amina A. Thomas*
Amina A. Thomas