IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFF BRUNECZ and JULIE ANN CHAPMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>WARREN GENERAL HOSPITAL<br><br>Defendant | ) | Docket No. 1:24-cv-00203-SPB |

**WARREN GENERAL HOSPITAL'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT OF PLAINTIFFS BRUNECZ ET AL.**

## INTRODUCTION

None of the information at issue in this case is confidential, private, or protected as a matter of law. That is made clear by comparing caselaw with Plaintiffs' own allegations. Warren General Hospital ("WGH") drew the line on its website where the law required. As alleged, the tracking technologies at issue operated only on the unauthenticated parts of Defendant's website. Plaintiffs' allegations about the Meta Pixel and Google Analytics walk up to and stop dead short of any authenticated pages—WGH's patient portal. Without those allegations, there is no basis to conclude based on the Amended Complaint that WGH tracked or disclosed anyone's individual medical records, particular prescriptions or individual diagnoses, and without allegations that WGH tracked or disclosed any protected or confidential information, Plaintiffs' cannot state a claim at any of their counts. For the reasons discussed herein and at length in WGH's principal brief, Plaintiffs' Amended Complaint should be dismissed, with prejudice. ECF No. 27.

## **ARGUMENT**

### I. PLAINTIFFS HAVE NOT ALLEGED DISCLOSURE OF PROTECTED CONFIDENTIAL INFORMATION.

Plaintiff's Response to the Motion to Dismiss continues to ignore their inability to establish that the information they allege was disclosed was the type of "confidential information" protected by HIPAA or any other statutory or common law scheme. Despite Plaintiffs heavy citation to *Murphy v. Thomas Jefferson*, that case specifically concerned "communications relating to appointments with medical providers, relating to specific healthcare providers, conditions, treatments, diagnoses, prognoses, prescription drugs, symptoms, insurance, and payment information, as well as messages exchanged in the patient portals" and highlights the distinction between information deemed protectable – as in *Thomas Jefferson* – and unprotected website usage data. 2024 WL 4350328, at *4 (E.D.Pa., 2024).

Further, Plaintiffs' Response misapprehends WGH's citation to the HHS guidance. WGH is not and has not argued that the HHS guidance is binding on this Court. To the contrary, as discussed at length in Defendants' principal brief, *American Hospital Association v. Becerra* ("*AHA*") invalidated the section of HHS guidance relied upon by Plaintiffs and central to the distinction between website usage data courts protect as confidential and unauthenticated website usage data Courts do not protect. 2024 WL 3075865 (N.D.Tex., 2024). There, the court addressed the HHS guidance and HIPAA privacy rule and made clear that third-party tracking technologies that collect merely website usage data are permitted on unauthenticated webpages. *See Am. Hosp. Ass'n*, 2024 WL 3075865, at *12-13 ("metadata from a[n unauthenticated public webpage] search cannot constitute IIHI [individually identifiable health information]."). The court's decision to vacate of portions of the HHS guidance is relevant only to the extent it goes directly to what is and is not confidential in the context of HHS guidance's definition of

protected information and the HIPAA Privacy Rule. *See* Amended Complaint, ECF 19, ¶¶2, 4, etc.

Whether one focuses on *AHA* or *Thomas Jefferson*, the standard is clear – tracking searches on unauthenticated webpages does not involve the transfer of private or confidential information.

Here, the allegations of the Amended Complaint fail to establish that WGH tracked or disclosed any protected information – activity on authenticated portions of the WGH websites. Plaintiffs argue that their Amended Complaint did allege the Pixel's operation within the Patient Portal, citing particular paragraphs in their brief. ECF 30 (citing ECF 19, ¶¶ 7, 120, 130).[1] The actual allegations of Plaintiffs' Amended Complaint belie that argument:

> 7. Defendant encourages patients to use its Website, along with its various web-based tools and services (collectively, the "Online Platforms"), to learn about WGH on its main homepage,[8] to search for services, health information, and research medical conditions,[9] to search for physicians,[10] to make payments,[11] to find out pertinent information on the hospital such as the visitation policy,[12] and to access a patient portal.[13] .

[1] It says nothing about what WGH did or how the Pixel allegedly operates to assert that Plaintiffs Brunecz and Chapman "relied on WGH's Website and Online Platforms" (ECF 19, ¶¶ 115, 125) and "use[d] the Patient Portal." ECF 19, ¶¶ 116, 126. Thus, Plaintiffs' citations to these paragraphs for that proposition (ECF 30, pp. 20, 24, 27, 30) are misleading.

Regarding Plaintiff Brunecz's use of WGH's website:

120. On information and belief, through its use of the Meta Pixel and other tracking technologies, WGH disclosed to Facebook:

a. the pages and content Plaintiff Brunecz viewed;

b. Plaintiff's seeking of medical treatment;

c. Plaintiff's status as a patient;

d. information regarding Plaintiff Brunecz' patient portal activity;

e. the specialties of the medical providers Plaintiff Brunecz searched for and viewed;

f. the names of the medical providers Plaintiff Brunecz searched for and viewed;

g. the search results that Plaintiff Brunecz clicked on;

h. the medical services Plaintiff Brunecz viewed; and,

i. Plaintiff Brunecz' identity via his IP addresses and/or "c_user" cookie and/or Facebook ID.

Regarding Plaintiff Chapman's use of WGH's website, Plaintiffs allege:

130. On information and belief, through its use of the Meta Pixel and other tracking technologies, WGH disclosed to Facebook:

a. the pages and content Plaintiff Chapman viewed;

b. Plaintiff's seeking of medical treatment;

c. Plaintiff's status as a patient;

d. information regarding Plaintiff Chapman's patient portal activity;

e. the specialties of the medical providers Plaintiff Chapman searched for and viewed;

f. the names of the medical providers Plaintiff Chapman searched for and viewed;

g. the search results that Plaintiff Chapman clicked on;

h. the medical services Plaintiff Chapman viewed; and,

i. Plaintiff Chapman's identity via her IP addresses and/or "c_user" cookie and/or Facebook ID.

Paragraphs 7, 120, and 130 of the Amended Complaint are the only allegations in which Plaintiffs' define their allegedly protected "patient portal activity" and upon which they base their arguments that Plaintiffs accessed and WGH disclosed "confidential" or "highly sensitive" information.[2] But the last point on the WGH website where Plaintiffs actually allege their activity was tracked and shared was that the access point to the WGH patient portal, nothing more. ECF No. 19, ¶¶ 83-104 (ending the 21 paragraph discussion of WGH's website at the moment users would enter the Patient Portal). Plaintiffs *do not* allege that WGH disclosed specific information about their activities within the patient portal, as required to meet the standard for protected information. Plaintiffs allege no specific activity or disclosure beyond the proverbial locked door of the authenticated patient portal. Plaintiffs allege the trackers operate on the unauthenticated parts of the Website, but not that they ever operated on the authenticated parts—including MyPortal—that require personal login credentials. *Id.*

To be certain, Plaintiffs seek to inject ambiguity in their allegations in the hope of getting past a motion to dismiss. Take, for instance, Paragraph 130(d), alleging that WGH disclosed "information regarding Plaintiff Chapman's patient portal activity." The appropriate response to this allegation is, "What activity?" If it was merely accessing the portal, and then moving to an

---

[2]Multiple times, Plaintiffs' brief contradicts its Amended Complaint. As this Court knows, a "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 472 (3d Cir. 2024) (citation omitted). Plaintiffs' brief asserts: "[w]hen…Plaintiffs…visited the website, including authenticated portions like the patient portal and appointment scheduler, the trackers' recorded patients' confidential health communications." ECF 30, p. 1; "Defendant Disclosed their Private Information *including on authenticated portions of the website like the patient portal and appointment scheduler*." ECF 30, p. 8 (sic); "Defendant subsequently disclosed…their patient portal activity…" ECF 30, p. 32.
But the actual Amended Complaint included no such factual allegations There is not a single allegation in the Amended Complaint that the Meta Pixel records anyone's username or password, that it records any document contained within the patient portal, or that it even tracks any usage whatsoever within the patient portal.

area of the website where there is no tracking, then that does not satisfy the standard. That is the equivalent of charging someone with breaking and entering for knocking on a locked door, and then peacefully leaving. If Plaintiffs' actions in the patient portal, such as scheduling appointments, disclosing actual diagnoses, or communicating with providers were tracked, then Plaintiffs needed to plead that. They do not, and cannot.

To argue that their website usage data is protected, Plaintiffs rely on disclosures of data in distinguishable cases – *Dittman* ("social security numbers," "tax forms," and "bank account information,"); *Wawa* ("customer payment card information"); *Opris* ("medical diagnoses and treatment information, prescription information, treating and referring physician information, and health insurance information"); and *Thomas Jefferson*—and the like.[1] But here, the type of data allegedly disclosed is fundamentally different and distinguishable from the data collected and disclosed in each of those other cases.

In order to survive a motion to dismiss, Plaintiffs need to have "allege[d] that Defendant transmitted Plaintiffs' communications relating to appointments with medical providers, relating to specific healthcare providers, conditions, treatments, diagnoses, prognoses, prescription drugs, symptoms, insurance, and payment information, as well as messages exchanged in the patient portals." *Thomas Jefferson*, 2024 WL 4350328, at *4. They did not and they cannot make such allegations, because even if the Meta Pixel and Google Analytics collected data on button clicks, webpage scrolling, search terms, and the like from the unauthenticated webpages, the trackers do not collect patients' private medical records, medication records, communications with providers, payment records, or other actual documents from authenticated pages including

[1] *Dittman v. UPMC*, 196 A.3d 1036, 1038 (Pa. 2018); *In re Wawa, Inc. Data Sec. Litig.*, 2021 WL 1818494, at *1 (E.D. Pa. May 6, 2021); *Opris v. Sincera Reprod. Med.*, 2022 WL 1639417, at *1 (E.D. Pa. May 24, 2022); *Thomas Jefferson*, 2024 WL 4350328, at *1 (alteration added).

MyPortal. This is the precise distinction that the court in *AHA* found to be appropriate. Therefore, Plaintiff's Amended Complaint should be dismissed, with prejudice.

**II. DESPITE THEIR ARTIFICE, PLAINTIFFS CASE IS FUNDAMENTALLY WEAK.**

Once the distinction between protected and unprotected information is clarified, the weakness of Plaintiffs' actual case becomes clear.

Initially, briefs responding to motions to dismiss are limited to twenty-five pages. *See* Practices and Procedures, Judge Baxter, II(B)(3). Plaintiffs received leave to file up to fifty pages. ECF 28, 29. They exceeded that limit, filing a brief that is nearly seventy (70) pages long. That includes forty-five (45) pages of briefing text plus an appendix of case law counting twenty-four pages with an argumentative table of purported parenthetical descriptions.

This violation of the rules is important, because it presents a window into Plaintiffs' approach. They are hoping to throw case after case at this Court, without any analysis, in the hope that the Court will treat the fact that some Plaintiffs have pleaded the disclosure actual confidential information as supportive to these Plaintiffs' claims. However, this quantity over quality approach fails. The string cites in Plaintiffs' several appendices of caselaw are misleading and unhelpful. *See generally* *Matter of Peter J. Schmitt Co., Inc.*, 154 B.R. 632, 635–36 (Bankr. D. Del. 1993) ("String cites are not helpful to the court….The court does not analyze legal issues by counting the number of decisions in favor or opposed to a result."). As memorably stated by the Third Circuit, "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009) (citations omitted).

Moreover, there are no truffles here. First, almost all of the cases were decided before the 2024 HHS Guidance was vacated by a federal district court in June 2024 and the United States' Government chose not to appeal. Thus, they rely on HHS's prior definition of the HIPAA Privacy Rule and are undermined by more recent developments in the changing tides of

court opinions regarding protected information. Second, Plaintiffs' citation to purportedly controlling case law is misleading.

For example, Plaintiffs' citation to *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121 (3d Cir. 2022), to argue that the Pixel and other alleged tracking software count as a device for purposes of the Pennsylvania Wiretap Statute presents, at best a creative quotation and, at worst, an outright misrepresentation of the Court's opinion. ECF 30.

First, Plaintiffs misquote *Popa* with a fabricated sentence, writing,

> Tracking software like pixels are a "device or apparatus … that can be used to intercept a [] communication[.]" *See* 18 Pa. C.S. § 5702 ("Wiretap Act"). The Third Circuit found as much in *Popa v. Harriet Carter Gifts, Inc.*, holding that "when software reroutes communications[…] the code [is] the rerouting *device* at issue." 52F.4th 121, 131 (3d Cir. 2022).

ECF 30, p. 41 (sic). That "quote" is a brazen misrepresentation. That sentence is not in *Popa*. Plaintiffs synthesized separate parts of the opinion, giving a false appearance of a direct quote; they stitched together snippets of two sentences—*twelve sentences apart from each other in different paragraphs*—while altering the latter snippet.[3] Those two sentences from *Popa* each read in full:

- "Electronic communications are similarly 'intercepted' when software reroutes communications to an interceptor." *Id.* at 130.

[3] As for *Popa*'s assuming without deciding the meaning of device, courts routinely decline to treat dicta as holdings. *See In re Permian Basin Area Rate Cases*, 390 U.S. 747, 775 (1968) ("[T]his Court does not decide important questions of law by cursory dicta inserted in unrelated cases."); *Roebuck v. Drexel Univ.*, 852 F.2d 715, 738 n.41 (3d Cir. 1988) (declining appellee's "invitation to transform what is in essence stray language and at best no more than dicta into a binding holding"). Treating dicta as holdings would violate the "principle of party presentation" in which highly motivated, adversarial parties push arguments that test the limits of the law and, in so doing, allow the court to clarify its meaning. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[Courts] wait for cases to come to them, and when [cases arise, courts] normally decide only questions presented by the parties.") (alteration in original). Accordingly, Plaintiffs' wrongly rely on *Popa* for the definition of device.

- "Thus when the code—the rerouting device at issue [FN8]—told Popa's browser to send communications to NaviStone and those electronic signals were routed to NaviStone's servers, an interception occurred." *Id.* at 131.

Plainly, *Popa* does not say what Plaintiffs claimed. The other cases Plaintiffs cite in support of their Wiretap Statute claims are non-precedential, unpublished, and non-binding. ECF 30, p. 38. In its principal brief, WGH preemptively distinguished the district court decisions in *Oliver v. Noom, Inc.*, 2023 WL 8600576, at *6 (W.D. Pa. Aug. 22, 2023) and *Schnur v. JetBlue Airways Corp.*, 2024 WL 2816552, at *1, 9-10 (W.D. Pa. June 3, 2024). ECF 27, p. 39 n.18. Four of Plaintiffs' cited Pennsylvania Court of Common Pleas decisions provide only a one sentence, unreasoned order. *See Frederick v. St. Clair Health Corporation*, 2024 WL 3375090 (Pa.Com.Pl. July 02, 2024); *Doe v. Main Line Fertility, Ltd.*, 2024 WL 1829564, at *1 (Pa.Com.Pl. Jan. 17, 2024); *Doe v. Reproductive Medical Associates of Philadelphia, P.C.*, 2024 WL 1829565, at *1 (Pa.Com.Pl. Feb. 09, 2024); *Doe v. OSS Orthopaedic Hosp., LLC*, 2024 WL 2026976, at *1 (Pa.Com.Pl. Apr. 26, 2024). And the fifth decision included obviously different facts against a hospital: "Defendants are accused of operating tracking software on the website and *patient portal*…" and that information was allegedly intercepted after plaintiffs were "*logging on* and providing confidential and personally identifiable information to the *patient portal*." *Doe v. Mount Nittany Health System*, 2024 WL 2093148, at *1-2 (Pa.Com.Pl. Mar. 21, 2024) (emphases added).

Numerous times, in the body of their brief and in their table of cases, Plaintiffs include decisions about cases when plaintiffs alleged operation of the Pixel or tracking technologies *within* the patient portal requiring personal login information. *See* ECF 30-1, p. 6 (*Mekhail v. N. Mem'l Health Care, 2024 WL 1332260*, at *3 (D. Minn. Mar. 28, 2024) ("clearly alleging that substantive information, including details about medical appointments, conditions, and treatments, was obtained via the Pixel."); ECF 30, p.3 (*In re Wawa, Inc. Data Sec. Litig.*, 2021

WL 1818494 (E.D. Pa. May 6, 2021) ("*hackers* accessed Wawa's point-of-sale systems and installed malware that targeted in-store payment terminals and gas station fuel dispensers" and *stole* "*customer payment card information*")). By of way further example, WGH has selected a smattering of cases from Plaintiffs' voluminous appendices to demonstrate the untenable nature of Plaintiffs' arguments:

| | | |
|---|---|---|
| ECF 30-1, p. 2 | *Thomas Jefferson*, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) | Denying motion to dismiss where plaintiffs alleged the Meta Pixel operated within the "online portal [requiring a patient login]" collecting patients' "communications…" |
| ECF 30-1, p. 3 | *Arroyo v. Seattle Reproductive Medicine*, 2024 WL 4288083 (Wash. Super. Sep. 23, 2024) | One sentence, unreasoned order denying motion to dismiss. |
| ECF 30-1, p. 4. | *Frederick v. St. Clair Health Corp.*, 2024 WL 3375090 (Pa. Com. Pl. July 02, 2024) | One sentence, unreasoned order overruling preliminary objections. |
| ECF 30-1, p. 5 | *Roe v. Amgen Inc.*, 2024 WL 2873482 (C.D. Cal. June 5, 2024). | Partially granting motion to dismiss where plaintiff alleged "tracking pixels were present on Defendant's website" and tracked patient's "date of birth, zip code, and insurance information, confirmed her patient status, and her" prescriptions |
| ECF 30-1, p. 6 | Doe v. OSS Orthopaedic Hosp., LLC, 2024 WL 2026976 (Pa.Com.Pl. Apr. 26, 2024) | One sentence, unreasoned order overruling preliminary objections. |
| ECF 30-1, p. 6 | *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *3 (D. Minn. Mar. 28, 2024) | Partially granting motion to dismiss where plaintiff alleged defendants "collect[ed] information on both of North's Websites: the public-facing one and the patient portal," obtaining "substantive information, including details about medical appointments, conditions, and treatments." |
| ECF 30-1, p. 7 | *Doe v. Hoag Memorial Presbyterian Hosp.*, 2024 WL 1190907, at *4 (Cal. Super. Feb. 16, 2024) | Partially granting demurrer where plaintiffs alleged they "enter[ed] personal medical information in order to retrieve and review medical records and test results," and defendant-hospital "embed[ed] Meta Pixel in their website and the 'Patient Health Records' portion of their portal." |
| ECF 30-1, p. 8 | *Doe v. Reproductive Medical Associates of Philadelphia, P.C.*, 2024 WL 1829565, at *1 (Pa.Com.Pl. Feb. 09, 2024) | One sentence, unreasoned order overruling preliminary objections. |

| | | |
|---|---|---|
| ECF 30-1, p. 9 | *Doe v. St. Lukes Episcopal Presbyterian Hospitals*, 2023 WL 11159100, at *1 (Mo.Cir. Dec. 28, 2023) | One sentence, unreasoned order denying motion to dismiss. |
| ECF 30-1, p. 17 | *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1074 (N.D. Cal. 2023), *appeal denied* 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) (listed in Pl. Appx. as "*Meta I*") | Partially granting motion to dismiss where plaintiff alleged healthcare providers installed the Meta Pixel on its patient portals and tracked and transmitted information to Meta when they logged into their patient portal |

In sum, Plaintiffs' truffle-hunting expedition through string-cited caselaw and voluminous appendices leads nowhere, grossly misrepresents the applicable case law, and still fails to rescue their doomed Complaint.

## III. COUNTS I THROUGH VII FAIL TO STATE A CLAIM

As discussed *supra* and more fully in WGH's principal brief, Plaintiffs' inability to demonstrate that any of the data allegedly tracked and disclosed is protected by HIPAA, any other statute, or any common law cause of action, is fatal to all of their claims. *See* ECF 27. And because they lack a cognizable injury, they have no standing to raise these claims. *See* *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Regarding Plaintiffs' claims for negligence (Count I) and negligence per se (Count II), without any actual or alleged disclosure of protected information, Plaintiffs cannot establish the existence of a duty, the substance of that duty, or breach of that duty—all of which are questions of law. *See* *Dittman v. UPMC*, 649 Pa. 496, 508, 196 A.3d 1036, 1043 (Pa. 2018).

To be sure, some forms of personal information—but not all—are protected under Pennsylvania law; as such, those who hold that information owe a duty to exercise reasonable care in protecting it. But unlike the categories of information addressed in *Dittman* , *Wawa*, *Opris*, and *Thomas Jefferson*, discussed *supra*, Plaintiffs have not alleged that WGH disclosed

any protected information and, therefore, have failed to state a claim for negligence. *See Santoro v. Tower Health*, 2024 WL 1773371, at *5 (E.D. Pa. Apr. 24, 2024) (dismissing negligence claim about the Meta Pixel). Similarly, Plaintiffs' invasion of privacy claim (Count III) fails due to their inability to establish a "highly offensive" intrusion. *See Santoro*, 2024 WL 1773371, at *6 .

Plaintiffs' remaining common law and statutory claims fail for this same fundamental reason. Plaintiffs' claims for breach of implied contract (Count IV), unjust enrichment (Count V), and breach of fiduciary duty (Count VI) fail because they cannot establish a contract, agreement, or duty to protect unprotectable information. *See American Hospital Association*, 2024 WL 3075865, at *2 (rejecting "inferences" from the connection between "a person's IP address and the searches performed: if an IP address corresponds to Person A, and Person A looks up symptoms of Condition B, one might conclude Person A has Condition B… the above scenario would never reveal that Person A affirmatively had Condition B."). Plaintiffs' claim for violation of the Unfair Trade Practices and Consumer Protection Law (Count VII) also fails because without collection or disclosure of protected personal information, there cannot be an ascertainable loss, as required to state a claim under the UTPCPL. *Cf. Thomas Jefferson*, 2024 WL 4350328, at *5 ("[S]everal courts have recognized the property value of personal information.") (citing *Opris, No*. 21-3072, 2022 WL 1639417, at *8 (collecting cases)).

Plaintiffs rely repeatedly on *Thomas Jefferson* throughout their brief. When they do cite cases in a medical context, those—unlike here—discuss a tracking technology operating in an authenticated webpage collecting confidential information like medical records, particularized prescriptions, and the like. Here, the allegations about website usage data do not fit that frame.

Finally, despite Plaintiffs' attempts to muddle WGH's straightforward statutory construction analysis of Plaintiffs' failure to state a wiretap claim (Count VIII), where a case

"implicates an issue of statutory interpretation, [the Court's] task is to determine the will of the General Assembly *using the language of the statute as our primary guide*." *Osprey Portfolio, LLC v. Izett*, 67 A.3d 749, 754 (Pa. 2013) (emphasis added) (citation and internal quotations omitted). Accordingly, WGH focused its arguments on the Wiretap Statute's text.

Plaintiffs have not alleged WGH used a "device" to disclose "contents" of an "electronic communication" as those terms are used in the Pennsylvania Wiretap Statute, 18 Pa. C.S. § 5701, *et seq.*, and insist on ignoring WGH's textual arguments. Whether by reference to dictionary definitions, canons of statutory construction, or legislative history, Plaintiffs cannot demonstrate that the word "device" encompasses, or was ever intended to encompass, the pieces of computer code at issue here. *See e.g.* *United States v. Ackies*, 918 F.3d 190, 199 n.5 (1st Cir. 2019) ("software is not a 'device' under its plain meaning."). Statutory construction also includes consideration of the statutory context. The Wiretap Statute was passed in 1978—before the invention of the Internet. Websites did not then exist. For Plaintiffs to argue that device means computer software ignores the practical reality in which the Legislature passed the Wiretap Statute. Indeed, "a statutory term has a fixed meaning over time[.]" *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 331 (3d Cir. 2022) (applying the fixed-meaning canon to a Pennsylvania statute). They could not have intended it to cover technology that did not then exist.

Later amendment of the Wiretap Statute reinforces this conclusion. At the time of enactment, the statutory language differed. At first, the meaning of "device" was limited to an "intercepting device," that in turn was defined as "any device or apparatus, including an induction coil, that could be used to intercept a wire or oral communication …." *See, e.g.*, Act of Oct. 21, 1988, P.L. 1000, No. 115, § 5, amending 1978, Oct. 4, P.L. 831, No. 164, § 2. The 1998

amendment substituted "electronic, mechanical or other" for "intercepting" throughout the section; thus, the statute then referred to an "[e]lectronic, mechanical or other device." *See* Act of Feb. 18, 1998, P.L. 102, No. 19.[4]

Accordingly, this Court should reject Plaintiffs interpretation that "device" means *any* "device and hold that software, including the Meta Pixel, is not a device under the statute.

For the same essential reasons, Plaintiffs have not established that the "contents" of an electronic communication —"information concerning the substance, purport, or meaning of that communication" – was intercepted as required to state a claim for violation of the Wiretap statute. 18 Pa. C.S. § 5702. Plaintiffs alleged only interception of record information—information "regarding the characteristics of the message that is generated in the course of the communication." *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 69 (W.D. Pa. 2023), *appeal docketed*, No. 23-2574 (3d Cir. Aug. 28, 2023); see ECF 30, p. 34-36. Allegations about "movements on the website ('mouse clicks and movements,' 'scroll movements,' and 'pages and content viewed')" are mere record information. *See also Goldstein v. Costco Wholesale Corp.*, 559 F.Supp.3d 1318, 1321 (S.D. Fla. 2021). Likewise, "information voluntarily input ('keystrokes,' 'copy and paste actions,' 'search terms,' and 'information inputted by Plaintiff')…did not convey the substance of any communication." *Goldstein*, 559 F.Supp.3d at

[4] By 1998, computers had proliferated. Websites too. When amending the law at that time, if the legislature wanted to include computer software or websites within the definition of device, it could have. "It is a canon of statutory construction that the inclusion of certain provisions implies the exclusion of others. The doctrine of *inclusio unius est exclusio alterius* informs a court to exclude from operation those items not included in a list of elements that are given effect expressly by the statutory language." *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 183 n.41 (3d Cir. 2017) (citation and internal quotations omitted).

1321. As such, "Plaintiffs' search terms for treatments" (ECF 30, p. 39) are not contents either. Simply put, their website usage data is not enough.

Plaintiffs' own cited caselaw does not support their argument about "contents" either.[5] Plaintiffs rely on *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, (Pl. Br. 40), but even that case explained that "routing, addressing, [and] signaling information" is not the content of a communication. 806 F.3d 125, 136–37 (3d Cir. 2015). To understand the definition of contents in the federal Wiretap Act, 18 U.S.C. § 2510 *et seq*., *In re Google* carefully parsed "the important difference between extrinsic information used to route a communication and the communicated content itself." *Id.* at 135. Now, ordinarily, "URLs of web pages visited" do not "constitute[ ] the 'content' of 'communications.'" *Cook*, 689 F.Supp.3d at 70. Focusing on "the plaintiffs['] alleg[ations] that the defendants acquired and tracked the URLs they visited," the Third Circuit explained that "some queried URLs qualify as content." *In re Google*, 806 F.3d at 139. Still, the court added the caveat that "[w]e need not make a global determination as to what is content, and why, in the context of queried URLs." *Id.* at 139 n.50.

Further, Plaintiffs twice call WGH's arguments "novel," yet in their seventy-page brief, they wholly fail to respond to three arguments raised by WGH (see ECF 30, p. 39). First, following the canon of *noscitur a sociis* and reading the word "device" in the full context of the Wiretap Statute show that other words in proximity to the definition of device indicate that

[5] Plaintiffs (at ECF 30, p.40) also wrongly rely on a case that dismissed claims under the federal wiretap statute. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1100 (9th Cir. 2014) ("[plaintiffs] did not allege that either Facebook or Zynga disclosed the 'contents' of a communication, a necessary element of their ECPA claims."). Plaintiffs alleged the disclosure of their names, addresses, and identities, but the Ninth Circuit decision also rejected that theory of liability, holding that alleged only record information. *See id.* (describing record information, writing, "Customer record information…includes the 'name,' 'address,' and 'subscriber number or identity' of a subscriber or customer. Accordingly, we conclude that 'contents' does not include such record information.").

device means a physical device. What's more, the exceptions to "device" are also physical, reinforcing this interpretation. *See* ECF 27, pp. 36–38.

Second, Plaintiffs' interpretation that "device" includes computer code violates the absurdity canon. Courts "will not read a statute to produce absurd or unintended results." *United States v. Hodge*, 321 F.3d 429, 431, 437 (3d Cir. 2003) (holding that a "wax and flour mixture is not a controlled substance analogue"). Plaintiffs' argument would turn every single website into a device under the Wiretap Statute, thus radically changing the functionality and legality of the Internet. *See* ECF 27, pp. 39-40.

Third, Plaintiffs ignore the rule of lenity—that ambiguities in the statute should be strictly construed in favor of the defendant. *See* ECF 27, p. 40. Both Pennsylvania and federal courts apply the rule of lenity to statutes with both civil and criminal application. *See A.S. v. Pa. State Police*, 143 A.3d 896, 907 (Pa. 2016) (citing *Leocal v. Ashcroft*, 543 U.S. 1, 11 n. 8 (2004)); 1 Pa. C.S.A. § 1928(b)(1) ("Penal provisions" "shall be strictly construed"). Lenity's supporting principles—notice, fair warning, and due process—are squarely implicated when one party attempts to apply a statute in an unusual context, as here. *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) ("The Supreme Court has long warned against interpreting criminal statutes in surprising and novel ways that impose unexpected burdens on defendants.") (citations and internal quotations omitted). Applying lenity here means holding that the Wiretap Statute does not reach software like the Meta Pixel.

For all the reasons discussed herein and more fully in WGH's principal brief, Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted and, therefore should be dismissed, with prejudice.

## CONCLUSION

Based on the foregoing, the Defendant, Warren General Hospital, respectfully requests that the Court dismiss the Amended Complaint, and all counts contained therein, with prejudice.

Respectfully submitted,

KNOX McLAUGHLIN GORNALL &
SENNETT, P.C.

BY: /s/*Neal R. Devlin*

Neal R. Devlin, Esq.,
PA ID 89223
ndevlin@kmgslaw.com
Aurora L. Hardin, Esq.
Mason D. Bracken, Esq.
120 West Tenth Street
Erie, Pennsylvania 16501
Telephone: (814) 459-2800
Fax: (814) 453-4530

Attorneys for Defendant,
Warren General Hospital

# 2547189.v3